**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 13071.**

United States Court of Appeals Third Circuit.

Argued March 22, 1960.

Decided April 21, 1960.

Nahum A. Bernstein and George H. Kaplan, New York City (Silver, Bernstein, Seawell & Kaplan, New York City, on the brief), for petitioner.

Frederick U. Reel, Washington, D. C. (Stuart Rothman, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Donald J. Bardell, Attorney, National Labor Relations Board, Washington, D. C., on the brief), for respondent.

Isaac N. Groner, Washington, D. C., on the brief for amicus curiæ, Insurance Workers International Union, AFL–CIO.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this unfortunate and wholly unnecessary labor dispute petitioner has been found to have refused to bargain with its employees' bargaining agent in violation of Section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S. C.A. § 158 (1958).

The matter arises out of petitioner's anxiety to continue its relations with its employees and their bargaining agent in accordance with the existing contract between them. It was precipitated by the needless insistence of petitioner upon meticulous assurance from the International to formally spell out the latter's continued conformity to that agreement. It was helped along by the stiff-necked attitude of the Union in refusing to allay the very real, though we think groundless, concern of petitioner that the Union was attempting to substitute local control of bargaining in place of the contract's national basis.

Prior to the situation before us, second stage grievances which are referred to the International under the employment contract, would be handled by President Russ, Vice President Heisel or Secretary-Treasurer Shine. Any of those International officers who happened to receive or be assigned a particular matter would, generally speaking, deal with the Company informally about it and his authority so to do was never questioned.

Early in 1958, because the work load on the type of grievances handled by the International officers had become very heavy, the President named Joseph Pollack additionally to act on them. It is noted that this was done without the approval of the Union's General Executive Board as called for by the Union's constitution. In retrospect we think it clear that no significance should be attached to the method of appointment. However, at the time this [coupled with the circumstance that Mr. Pollack was president of Local 19, the New York City local, and had been, according to the International's letter to the Company, given "authority to represent this Union in the processing and handling of grievances arising in the Greater New York City area"] did create the disturbing thought in petitioner that the International was decentralizing its bargaining control, contrary to the contract. As a result the Company, assuming far too much, wrote the Union asking it to "tell us what specific responsibilities * * * you were delegating to Local 19, and the authority for your action." The Company stated its reason for the request was that it questioned the authority of the International to delegate or assign its authority to act as bargaining agent. It went on to point out the resultant awkwardness which would develop saying: "You appreciate, of course, that if the International and the Company can delegate responsibilities, the Company could be negotiating with approximately 250 local unions, and the International could be negotiating with our 49 regions and 7 Regional Home Offices. This would make an unwieldly situation." The International replied: "We believe our letter speaks for itself. The meaning is clear: Whatever the International may do under the contract, Joseph Pollack may do for the International." By that time the attitude on both sides had become rigid. The Company was not furnished a categorical statement that Mr. Pollack in acting on grievances would be doing so solely for the International in his capacity as a member of its Executive Board and in no way functioning

for his local and as the latter's President. The Company then wrote President Russ on June 27, 1958 saying:

"It is clear from your letter of June 19, that you want to delegate to local 19 statutory and contractual responsibilities vesting exclusively in the International.

"In our opinion, you do not have this right under the general labor law or under the union contract. Therefore, we will not grant your request."

On the whole record we cannot find substantial evidence which would warrant holding petitioner's position to be "contrived". There had been a long continued satisfactory relationship between petitioner and its employees, soundly based on mutual respect and understanding. And the mutual advantage of the national bargaining feature of the contract is seemingly apparent; at the very least it is not questioned by the Union. So actually the present litigation arises from the overly cautious stand of the petitioner to which the Union refused to accede. A little more trust by the Employer, a little more flexibility by the Union and the difficulty would have been eliminated to the credit of both parties.

The Union constitution does require that the President's appointment of a representative of the International be approved by the General Executive Board. But we think the designation of Mr. Pollack by President Russ was in good faith and that the Board's approval could have and would have been obtained in due course if the situation had not immediately arrived at the impasse before mentioned. We agree with the Board as does the petitioner, that the Union has the right to designate its representative for handling grievances; that nothing in the contract or in the statute precludes the designation of Mr. Pollack as such. We have seen nothing from the Employer refusing to deal on grievances under the employment contract with Mr. Pollack when properly designated as a representative of the International

The order of the Board will be modified and as modified will read as follows:

Upon the entire record in this case, and pursuant to Section 10(c) of the National Labor Relations Act [29 U.S.C.A. § 160(c)], the National Labor Relations Board hereby orders that The Prudential Insurance Company of America, Newark, New Jersey, its officers, agents, successors, and assigns, shall:

1. Upon proper request, bargain collectively, including the negotiation of grievances, with Insurance Workers' International Union, AFL-CIO, through any representative properly chosen by it, including Joseph Pollack, as the exclusive representative of all employees in the appropriate unit, which latter is: All district agents employed by the Respondent in the States of Alabama, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, the District of Columbia, and the City of Toledo, Ohio; excluding managers, staff managers, agencies service representatives, office supervisors, assistant office supervisors, clerks, and all other supervisors as defined in the Act.

2. (a) Post at its home office in Newark, New Jersey, and at its district offices in the greater New York City area, copies of the notice attached hereto. Copies of said notice, to be furnished by the Regional Director for the Twenty-second Region, shall, after being signed by Respondent's representative, be posted by Respondent immediately upon receipt thereof and maintained by it for a period of sixty (60) consecutive days

thereafter in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by Respondent to insure that said notices are not altered, defaced, or covered by any other material.

(b) Notify the Regional Director for the Twenty-second Region, in writing, within ten (10) days from the date of this Order what steps it has taken to comply herein.

The above referred to notice will conform to the order as modified.

Proposed decree and notice in accordance with this opinion may be submitted.