**LIBERTY MUT. INS. CO. v. THOMPSON.**

No. 12362.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1948.

Rehearing Denied Jan. 21, 1949.

Henry D. Akin, of Dallas, Tex., for appellant.

C. A. Brian, of Marshall, Tex., and J. R. Cornelius, of Jefferson, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This action was brought by the appellee under the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St.Tex. art. 8306 et seq. He was awarded a lump-sum judgment for accidental injuries suffered by him in the course of his employment. The facts in evidence as found by the jury were, in substance, as follows:

On the night of January 3, 1945, without a mask to protect his nose and mouth while he was unloading boxes that contained T. N. T., the appellee began to feel weak, became hungry, began vomiting, and felt as if he were going to faint. This condition had lasted for an hour or two when another load of boxes was brought in for him to unload. When the door to the room was opened, the wind came in and was cold; it stirred up the T. N. T. powder, and whipped it back into his face; it knocked him down, or he fainted ("just like that," he said, snapping his fingers), and he was unconscious for about fifteen minutes. When he came to himself, he was still in the box-building room with a double door on the front, and they had three or four steam heaters in there to keep their hands warm. When the doors were shut, it was warm; but when the doors were open and the wind blew in, the dust was worse than when they were shut. All the time when the door was open, the wind continued to blow "this powder and stuff from these old boxes, this powder being T. N. T. powder."

Appellee detailed at some length his subsequent history, having been first treated by Dr. Marsh, and the next year by the doctors at the Charity Hospital in Shreveport. Dr. Pardue, whom the jury evidently believed, testified that his examination in 1946 revealed that appellee was suffering from a condition known as pernicious anemia, the exact cause of which is unknown; but physicians do know that it is due to an injury which results in a disability of the red bone marrow to produce the red blood cells properly; that the blood cells are normally produced in the bone marrow from which comes the blood; that anemia may result from injury to the red-blood-cell-producing tissues; that there are several substances capable of producing injury to the bone marrow, "particularly any chemicals containing the pernicious ring, which includes T. N. T." It is generally recognized medically, he said, that T. N. T. may cause a deficiency of this bone marrow or an injury to it, because T. N. T. has a poisonous effect on the red bone marrow.

In answer to a hypothetical question, the doctor specifically answered: "Well I think it would be logical to assume that the poisoning of the type he had, working under those conditions, he could have very easily received a poisonous dose of trinitrotoluene which does injury to the sight of the pathology [pathologist] in the case of pernicious anemia. We do know that. The rest we have to assume. I would assume that it could have been the precipitating factor of the anemia." Then came the following question and answer: "Q. Do you regard it as logical to assume that with the history I have given you, doctor? A. I do." In his report to the Industrial Accident Board, this doctor said: "In my opinion, disability was due to injury suffered during the time he was handling T. N. T. Nature of injury found on examination: Pernicious anemia, condition probably due to T. N. T. poisoning."

The issue as to the nature and duration of appellee's injury was submitted to the jury, and the questions on this appeal are whether the case should have been submitted to a jury at all; and, if so, whether it was properly submitted. Appellant's specifications of error (6 and 7) go to the heart of the merits of this case, and reveal appellant's conception of the ultimate question for decision to be whether the appellee's disability was the result of an occupational disease or an accidental injury, the former being noncompensative and the latter compensative under the Texas law.

We go a step further, and state the issue before us to be as follows: Whether or not there was before the jury substantial evidence from which a fair and impartial man might reasonably infer that appellee's disability was directly and proximately caused, or materially contributed to, by an accidental injury incurred by him on January 3, 1945, from breathing T. N. T. dust in the course of his employment.

That the appellee became disabled in the course of his employment on said date, after breathing large quantities of T. N. T. dust, is clearly established by the evidence; but was his disability the result of an accidental personal injury, and not merely an occupational disease? The question is a close one, but we think there is in the record sufficient substantial evidence of the accidental origin of appellee's disease to support the verdict. For illustration, let us take a case that is not close: If a man dies of pneumonia brought on by an attack of influenza, we would say that he died of the disease, and that it was a natural death; but if the pneumonia causing death was the result of a gunshot wound accidentally inflicted, we would say that he died of an accidental injury.[1] Such a wound intentionally inflicted by a criminal is accidental as to the injured party.[2]

In Buckeye Cotton Oil Company v. Ragland, 5 Cir., 11 F.2d 231, this court upheld damages awarded for chronic bronchitis and other respiratory ailments caused by breathing air that was laden with particles of dirt, dust, and lint, put out in the manufacture of cotton seed oil. The just-cited case was not an action under any workmen's compensation act, and the plaintiffs therein were not employees; but the decision illustrates how both equitable jurisprudence and the common law take cognizance of personal injuries caused by breathing unwholesome air, which has been impregnated with extraneous substances through the negligence of the defendant. We have been cited to no provision in the workmen's compensation law of Texas, nor to any decision thereunder, which indicates that employees under the Texas statutes are not to be compensated if similarly injured accidentally in the course of their employment.

We realize that the question of either the employer's negligence or the employee's contributory negligence is wholly foreign to the letter and spirit of the Texas Workmen's Compensation Act, the purpose of which is to provide compensation for accidental injuries to industrial employees;[3] but, on the other hand, the act neither expressly includes nor excludes occupational diseases. Therefore, it may be conceded for present purposes that recovery cannot be had for what, when properly understood, is termed an occupational or industrial disease.[4] We understand an occupational disease to be one acquired in the usual and ordinary course of employment, and which from common experience is generally recognized to be necessarily incidental thereto. An accidental injury is one that occurs unexpectedly, not in the natural course of events, and that may be traced to a definite time, place, and cause.[5] The cause may even be rooted in the negligence of the employer or the trespass of a stranger, since neither negligence nor willfulness on the part of the employer or a stranger is ground for denying compensation for an injury that is accidental as to the employee. One meaning of incidental, which is given in the dictionary, is "accidental;" another is "happening as an occasional event." Why, then, may not a

---

[1] It is a historical fact that President McKinley died of peritonitis, which was caused by a bullet that had been fired from the pistol of an assassin.

[2] Interstate Business Men's Accident Ass'n of Des Moines, Iowa, v. Lester, 8 Cir., 257 F. 225; Employers Indemnity Corp. v. Grant, 6 Cir., 271 F. 136, 20 A.L. R. 1118; New Amsterdam Casualty Co. v. Jones, 6 Cir., 135 F.2d 191; 1 Appleman on Insurance Law and Practice, § 486;

29 Am.Jur., 972; 45 C.J.S., Insurance, § 751, page 772.

[3] Travelers Ins. Co. v. Lancaster, Tex. Civ.App., 71 S.W.2d 318.

[4] Ætna Life Ins. Co. v. Graham, Tex. Com.App., 284 S.W. 931; Hock v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 80 S.W.2d 793.

[5] Salinas v. New Amsterdam Casualty Co., 5 Cir., 67 F.2d 829; Middleton v. Texas Power & Light Co., 108 Tex. 96, 109, 185 S.W. 556.

725

jury say that an incidental disease, negligently inflicted by an employer upon an employee, is an accidental injury as to said employee? We do not answer this question, but it is one that the jury might have pondered.

In actions at law, where it is necessary to distinguish between occupational diseases and diseases caused by accidental injuries, it is preeminently the function of the jury to resolve all conflicts in the evidence, including conflicts in the testimony of expert witnesses; to draw all reasonable inferences properly deducible from proven or admitted facts; and, where two or more reasonable inferences may fairly be drawn from the same facts, to determine which is the correct inference. In this case, we think, the jury was warranted in finding that the accidental cause of the disease was the same as if unintentionally appellee had gotten poison in his blood through his stomach instead of his lungs, or had lost and eye from T. N. T. dust lodging therein.

Moreover, it is the function of the jury, if it sees fit, to reconcile the testimony of any witness who has made inconsistent statements, or to believe only such parts of his evidence as it deems worthy of belief; and the jury is not required to reject the entire testimony of any witness merely because there are conflicts therein, but it may reject all of it if the jury believes that such witness has willfully and corruptly sworn falsely to any material fact.

Finally, the jury is the sole judge of the credibility of the witnesses and of the weight or value of their testimony. In actions at law in the federal courts, where the evidence is such that reasonable men may fairly differ as to whether an employee is disabled from an accidental injury or an occupational disease, the right of trial by jury is preserved by the Seventh Amendment, "and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." This means that an appellate federal court should not disturb the jury's finding of fact as to the accidental cause of appellee's disease if on the trial there was any substantial evidence to support it. This is so, even though the appellate judges may not believe the fact so found to be true, since an appellate court has no constitutional right to express an opinion as to the truth or falsity of such fact, the issue being entirely within the province of the jury.[6]

The judgment appealed from is

Affirmed.

[6] Atlantic Works v. Brady, 107 U.S. 192, 203, 2 S.Ct. 225, 27 L.Ed. 438; United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 121, 9 S.Ct. 755, 33 L.Ed. 60; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720, 724; Olberg v. Kroehler, 8 Cir., 1 F.2d 140, 145; Mutual Life Ins. Co. of New York v. Treadwell, 5 Cir., 79 F.2d 487; Columbia Casualty Co. v. Lyle, 5 Cir., 81 F.2d 281; Bridgeman v. Ford, Bacon & Davis, 8 Cir., 161 F.2d 962, 965; Galveston, H. & S. A. Ry. Co. v. Murray, Tex.Civ.App., 99 S.W. 144; Le Master v. Ft. Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224. Cf. Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382.