Peter CALDEROLA, Plaintiff-Appellee,

v.

CUNARD STEAMSHIP COMPANY Limited, Defendant-Appellant and Third-Party-Plaintiff-Appellee,

v.

JOHN T. CLARK & SON, Third-Party-Defendant-Appellant.

No. 255, Docket 25960.

United States Court of Appeals
Second Circuit.

Argued April 1, 1960.

Decided May 31, 1960.

476

Benjamin J. Sergi, Brooklyn, N. Y. (DiCostanzo & Klonsky, Brooklyn, N. Y., on the brief), for plaintiff-appellee.

John W. Castles 3d, New York City (John F. O'Connell and Lord, Day & Lord, New York City, on the brief), for defendant-appellant.

William F. McNulty, New York City (Hampton & Dietel, New York City, on the brief), for third-party defendant-appellant.

Before LUMBARD, Chief Judge, BARNES, Circuit Judge,* and J. JOSEPH SMITH, District Judge.*

LUMBARD, Chief Judge.

These are appeals from two judgments of the district court, the first entered upon a jury verdict holding Cunard Steamship Company liable to Peter Calderola for injuries suffered by Calderola while working as a longshoreman on Cunard's ship, the S.S. Media, and the second entered upon findings made by the court without a jury holding John T. Clark & Son, the stevedoring firm that employed Calderola, liable to indemnify Cunard under the stevedoring contract between Clark and Cunard.

On August 17, 1956, Calderola was working as a winch operator at the No. 6 hatch of the Media, which was docked at Pier 92, North River, in New York City. Upon completion of loading at the hatch, plaintiff mounted a metal ladder running up the side of the deckhouse in order to return a wooden plank which he used as a seat while operating the winch to the roof of the deckhouse and in order to cut the ropes holding the canvas covering used to protect the winch operator from sun and rain. Although with his hand he had felt some grease on the top rung of the ladder as he went up it, Calderola began his descent a moment or two later by placing his foot on the same rung. Because of the grease his foot slipped and he fell to the deck, injuring his back and neck. His suit against Cunard alleged that the vessel was unseaworthy by reason of the presence of the grease and that the ship's crew was negligent in failing to discover and remove it. The court dismissed the negligence claim because no evidence was submitted on this point, but upon the unseaworthiness claim the jury brought in a verdict for plaintiff of $8,500. Defendant's motion for a new trial was denied, upon the condition that plaintiff remit $2,000 of his recovery, to which condition plaintiff agreed. The claim of Cunard over against Clark was decided by the court, both parties having waived a jury. The court found that Clark had breached its contract with Cunard to perform the stevedoring work in an efficient, safe and workmanlike manner, and awarded indemnity to Cunard in the same amount as plaintiff's recovery. We affirm the judgment for plaintiff, but reverse that in favor of Cunard.

The only grounds urged for reversal of the judgment in favor of plaintiff are (1) that a transitory condition, such as the presence of grease on the rungs of a ladder, does not render a ship unseaworthy, and (2) that no duty to maintain the ladder in a seaworthy condition extended to the plaintiff, since this was not a part of the ship to which he was entitled, or could reasonably have been expected, to go in the performance of his duties.

The view that a temporary condition, arising subsequent to the commencement of a voyage, may not constitute an unseaworthy condition was recently rejected by the Supreme Court in Mitchell v. Trawler Racer, Inc., 80 S.Ct. 926. The Court held that the duty to maintain a seaworthy ship is no less exacting when the unseaworthy condition is only a transitory one than it is when the defect inheres in the ship's hull or machinery. "[L]iability for a temporary unseaworthy condition is [no] different from the liability that attaches when the condition is permanent." 80 S.Ct. at page 933.

With reference to the second claim of error, we stated in Lauricella v. United States, 2 Cir., 1950, 185 F.2d 327, 328, that a shipowner's duty to provide stevedores with a reasonably safe place to work is "confined to those parts of the ship to which the [stevedore] * * * may reasonably be expected to go. His status as a business visitor is lost if he goes elsewhere * * *" However, it is plain that the ladder from which plaintiff fell in this case was part of his place of work. The testimony showed that plaintiff, who worked on the Media each time it came into New York, had long been accustomed to storing his seat atop the deckhouse, and that it was necessary to climb to the roof of the deckhouse to release the rope securing the tent which protected the winch operator. Although perhaps neither the comfort of a seat nor protection against the elements were absolutely necessary for the performance of plaintiff's job, both were customary and both benefited the shipowner by making more tolerable and pleasant plaintiff's working conditions. It was entirely reasonable to anticipate that plaintiff would make use of the ladder to reach the roof of the deckhouse. Moreover, he did not leave the confines of his place of work to do so.

Clark's appeal from the decision that it breached its contractual duty to

perform its services in a safe and workmanlike manner challenges the sufficiency of the evidence to support this finding. The contract between Clark and Cunard stated that the former would "provide all necessary stevedoring labor, including winchmen, \* \* \* foremen and such other stevedoring supervision as may be required for the proper and efficient discharging of cargo from or the loading of cargo into vessel's holds. \* \* \*" Under this agreement Clark was not required to act as an insurer against any loss by Cunard or to discover and correct every hidden danger. Its duty was only to perform its services with "reasonable safety." Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

■ There was no evidence in the case before us that the stevedore or any of its employees knew of the grease on the ladder until plaintiff placed his hand in it as he climbed to the roof of the deckhouse a few moments prior to the accident. This knowledge acquired by the plaintiff so short a time before he slipped was insufficient to put the stevedore on notice of the condition and give it an opportunity to remove the grease or to have the ship's crew do so before the accident. Cf. Santomarco v. United States, 2 Cir., 277 F.2d 255. Furthermore, the evidence tended to show that the grease could have been present on the ladder for only a short time before the accident, and thus it would be unreasonable to require the stevedore to have discovered the grease in the course of normal routine.

Absent knowledge or constructive notice of the presence of the grease, the stevedore could only have breached its contractual duty if the conduct of its employees created the dangerous condition. Upon this question, there was testimony by one of plaintiff's fellow employees that a "fall" or wire cable, which hung down from an unused boom that had been swung out of the way by the stevedores, was touching the ladder. However, one of the Media's officers gave evidence that this wire had not been greased for some time, since such cables were only greased when the ship was at sea. And plaintiff himself testified that the grease on the cable was dried and brittle, while the grease into which he placed his hand and upon which he slipped was light and fluid. Thus, there was no evidence whatever that the grease which caused the accident came from the cable which the longshoremen had permitted to rest against the ladder.

The trial court's determination that Clark breached its contract to perform its duty in a safe and workmanlike manner was without foundation in the evidence and must be reversed.

Judgment for the plaintiff affirmed. Judgment for the defendant against the third party defendant reversed.