George WEIGEL, Libelant,

v.

THE M/V BELGRANO, her engines, tackle and gear, and any and all persons claiming any interest therein, and Partenweederei, M. S. Belgrano, owner and operator, Seekonter Line, Charterer and/or operator, Respondents.

Rudolph A. OETKER, Claimant,

v.

BRADY–HAMILTON STEVEDORE COMPANY, a corporation, Third-Party Respondent.

Civ. No. 10027.

United States District Court
D. Oregon.
Aug. 3, 1960.

Frank H. Pozzi, Pozzi & Wilson, Portland, Or., for libelant.

Erskine B. Wood, Wood, Matthiessen, Wood & Tatum, Portland, Or., for respondents.

Nathan J. Heath, Gray & Lister, Portland, Or., for third-party respondent.

EAST, District Judge.

Libelant was awarded herein a decree of damages against the Respondents and Claimant (Petitioners) in compensation for personal injuries received while working as a dock-working longshoreman employee of Brady-Hamilton Stevedore Company (Stevedore), third-party respondent herein, then engaged in loading and stowing the M/V Bulgrano (Vessel) with lumber cargo and in all respects performing the stevedoring work on dock and on board the Vessel pursuant to a stevedore contract with the representatives of Vessel.

With the view of placing ultimate liability, if any, at the doorstep of Stevedore, the Petitioners interpleaded the Stevedore, petitioning for indemnity and reparations for all loss that they might sustain by reason of Libelant's claims. The Petitioners contend, inter alia:

A. "2. As contracting stevedore, impleaded respondent owed the implied contractual obligation to perform the stevedoring work in a safe and proper manner.

"6. If (Petitioners) herein should be held liable in this case to libelant, then (Petitioners) have a right to recover over against impleaded (Stevedore) for full and complete indemnity because of said (Stevedore's) failure to perform its stevedore contract in a safe and proper manner * * *;"

B. "4. The gear and machinery of the vessel were in good and seaworthy condition, and the ac-

cident was caused by negligence of (Stevedore) in failing to properly use said gear and machinery, and particularly in failing to properly secure the topping lift pennant (pigtail line) to the winch gypsy head.

"5. If the gear and machinery of the vessel were unseaworthy at the time of the accident, which (Petitioners) deny, then said unseaworthiness was either created by the negligence of (Stevedore), or was 'brought into play' by (Stevedore's) improper use of said gear and machinery or by (Stevedore's) negligence in using said gear and machinery after knowledge of its condition."

C. "6. * * * and (Petitioners) are entitled to recover from and against (Stevedore) for all damages that may be awarded herein and for costs and expenses, including such reasonable attorney's fee as may be incurred by (Petitioners) in defending against the libel."

The issue of indemnity was segregated and reserved awaiting adjudication of Libelant's claims against Petitioners.

In connection with the segregated issue of Libelant's claim, the Court concluded [1] that the Vessel was unseaworthy in that her topping "lift gear" for the starboard boom at No. 1 hatch malfunctioned and permitted the boom to fall upon the Libelant, and more particularly:

"(1) * * * * *

"3. That (pawls) on the ratchet in the topping lift gear was (were) defective and inadequate in that it (they) did not drop into each cog as the boom was hoisted so as to prevent the boom from falling."

"(2) That (Petitioners) were negligent in:

"4. Failing to properly inspect said vessel and particularly the said ratchet and (pawl) device to said hatch to determine the defective nature of same * * * (Reasonable inspection would have disclosed the malfunctioning of the pawls, known to the longshoreman the day before.)

"5. Failing to provide (the) libelant with a safe place to work * * * * "

"(3) That said unseaworthiness of the vessel and concurring negligence of (Petitioners) were the proximate causes of the falling of the boom and libelant's resulting injuries."

The segregated and reserved issue of Petitioners' claim for indemnity from Stevedore is now ripe for packaging.

As will be later pointed out, the circle of judicial legislation is now complete except for trimming the loose ends of the knot and making it shipshape. The longshoreman who was deprived of a cause of action to recover damages for personal injuries caused through the negligent act of his employing stevedore by the Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C.A. § 901 et seq., has now for all practical purposes regained this comfort.

The first stage of this metamorphosis commenced by clothing the longshoreman (seaman *pro hac vice*) with the mantle of protection against unseaworthiness of the Vessel in whose service he worked, all to the despair of the shipowner.[2]

---

1. Court's opinion upon the segregated issue of Petitioners' liability to Libelant, entered April 14, 1960, D.C., 189 F. Supp. 103.

2. "There would seem to be no aspect of judicial legislation in the mere permission of suits by longshoremen and harbor workers against shipowners or other third parties. Such suits are contemplated by the Longshoremen's Act. 33 U.S.C.A. § 933.

"However, criticism can validly be directed at the extension of the doctrine of unseaworthiness to longshoremen whose employers are wholly at fault, permitting recovery from the vessel. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 80 [85, 66 S.Ct. 872, 90 L.Ed. 1099] (1946)." Excerpt from an address by Edward C. Holden, Jr., Esq., of New York City, to the Federal Bar Association Convention, Washington, D. C., September 20, 1957.

The second stage was the bringing of the employer-stevedore to accountability for causing the unseaworthy condition through the now out-of-favor theory of active negligence of stevedore versus passive negligence of the shipowner.[3]

■ Then the third stage, where a stevedore is now ultimately liable to make reparations for loss resulting from its breach of a pre-existing continuing contractual duty, namely, the failure while performing its stevedore contract to meet its contractual warranty to handle the cargo and use the ship's gear incidental thereto with reasonable safety in light of expertise in the field. This is so even though the ship's gear may have been malfunctioning and therefore un-seaworthy when taken over by a stevedore. Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176, at page 180, citing Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

Will the cycle be eventually completed with a fourth-stage judicial sanction of an action by the injured longshoreman directly against his defaulting employer-stevedore, on the premise that the long-shoreman was engaged in ship's service and was a person who in the reasonable contemplation of the parties to the warranty might be expected to be injured through failures caused by the Steve-dore's breach of warranty to handle cargo and use ship's gear incidental thereto with reasonable safety?[4]

3. "The manifest injustice to shipowners leads to the permission of recovery by the innocent shipowner from the employer of longshoremen, making recovery from the employer by the employee, by indirection, possible in some instances in plain contravention of the Longshore-men's Act, as was decreed in the Palazzolo case. Ryan [Stevedoring] Co. v. Pan-Atlantic [S. S.] Corp., 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956). Black, J., dissenting, [350 U.S.] at [page] 141 [76 S.Ct. at page 241], stated: 'Liability is thus imposed because of the negligence of the employer's other employees. This the act forbids. Whether called "common law indemnity", "contribution", "subrogation", or any other name, the result is precisely the same. The employer has to pay more "on account of" an injury to his employee than Congress said he should.'

"Accordingly it must be conceded that the letter and spirit of the Federal Long-shoremen's and Harbor Workers' Compensation Act receives scant attention from the courts." Excerpt from Mr. Holden's address.

4. It has been said that a stevedore's warranty of workmanlike service is comparable to a manufacturer's warranty of the fitness of its manufactured products. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Generally, see Prosser on Torts (2 Ed. 1955), § 84.

In DiVello v. Gardner Machine Co., Ohio Com.Pl.1951, 102 N.E.2d 289, 293, a manufacturer's warranty for the fitness of its product (grinding wheel which exploded) was extended to the injured employee of the purchaser of the product, although not in privity of contract of purchase, but being a "workman of the vendee who was injured in its ordinary use because of a latent defect." For a like holding, see Peterson v. Lamb Rubber Co., Cal.App.1959, 343 P.2d 261. Also see Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 99–100, wherein the Court says:

"In the present matter, the basic contractual relationship is between Claus Henningsen, Chrysler, and Bloomfield Motors, Inc. The precise issue presented is whether Mrs. Henningsen, who is not a party to their respective warranties [driver of defective car] may claim under them. In our judgment, the principles of those cases and the supporting texts are just as proximately applicable to her situation. We are convinced that the cause of justice in this area of the law can be served only by recognizing that she is such a person who, in the reasonable contemplation of the parties to the warranty, might be expected to become a user of the automobile. Accordingly, her lack of privity does not stand in the way of prosecution of the injury suit against the defendant Chrysler. * * *

"By a parity of reasoning, it is our opinion that an implied warranty of merchantability chargeable to either an automobile manufacturer or a dealer extends to the purchaser of the car, members of his family, and to other persons occupying or using it with his consent. It would be wholly opposed to reality to say that use by such persons

In view of the ultimate holding to follow, it is not necessary to deal with Petitioners' contentions (B, above) of a breach of Stevedore's warranty by reason of negligent use of the Vessel's gear (pigtail line dog and gypsy head locking devices) by a longshoreman-employee of Stevedore, which in turn "put into play" the defective and unseaworthy "lift gear" under the teachings of Crumady.

In passing, we might say there is strong suspicion of such negligence,[5] but suspicion in and of itself is not as yet circumstantial evidence of negligence.

The tenable basis of Petitioners' claim for indemnification is simply the alleged breach by Stevedore of the contractual implied in-fact warranty in its stevedoring contract to perform its contract with reasonable safety.

For the duties of the Stevedore to the Petitioners in the performance of its stevedoring contract, we find that:

"[I]n Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491, the Supreme Court, after stating that the stevedore's contractual obligation to perform his work *with reasonable safety* related not only to handling of cargo, but also *to the use of equipment incidental thereto,* said: ' * * * If

in that regard respondent rendered a substandard performance which led to foreseeable liability of petitioner, the latter was entitled to indemnity absent conduct on its part sufficient to preclude recovery. * * * ' While a standard to be applied to 'conduct * * * sufficient to preclude recovery' has not been created, it has been decided that the mere furnishing of defective equipment by the ship to the stevedore does not bar recovery over under the contract. Crumady v. The Joachim Hendrik Fisser, supra; Calmar S. S. Corp. v. Nacirema Operating Co., 4 Cir., 1959, 266 F.2d 79; American Export Lines, Inc. v. Revel, 4 Cir., 1959, 266 F.2d 82." [Italics supplied.]

* * * * * *

"Although the contractual obligation of Stevedores in this case arises through implication by the conduct of the parties, we are of the opinion that such contract was binding. Restatement, Contracts § 5 (1932). As is stated in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L.Ed. 133:

" ' * * * This obligation is not a quasi-contractual obligation im-

---

is not within the anticipation of parties to such a warranty of reasonable suitability of an automobile for ordinary highway operation. Those persons must be considered within the distributive chain.
"Harper and James suggest that this remedy ought to run to members of the public, bystanders, for example, who are in the path of harm from a defective automobile. 2 Harper & James [The Law of Torts, 1956 Ed.] p. 1572."
Compare Gottsdanker v. Cutter Laboratories, et al. (Phipps v. Cutter Laboratories) 6 Cal.Rptr. 320, 322 (consolidated cases Nos. 18413 and 18414, District Court of Appeals, First Appellate District, Division Two, State of California), entered July 12, 1960, wherein it was held that the defendant manufacturer of Salk vaccine which "contained live virus of poliomyelitis" were held liable for causing the resulting diseases in each of the plaintiffs when inoculated by physi-

cians with the vaccine secured through independent suppliers for the doctors.
Is it not logical to further suggest that since the Stevedore's warranty to perform his work with reasonable safety runs to the protection of the Vessel, that it also and necessarily runs to the protection of persons working in the ordinary course in her service as "seamen pro hac vice"?

5. "The winch driver called to a ship longshoreman and asked for 'a hand' in attaching the free end of the pigtail line to the gypsy head. The winch operator did not see this operation, and the longshoreman involved can give no satisfactory account of what he did in the way of fixing the free end of the pigtail line to the gypsy head. In any event, it was somehow attached, but evidently not properly." Excerpt from prior opinion.

plied in law or arising out of a non-contractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured products. * * *' ·

\* .\* \* \* \*' \*

"'* * * The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.'" Smith v. Jugosalvenska Linijska Plovidea, supra [278 F.2d 181].

The full acceptance by the Supreme Court of the United States in Crumady of the rationale of the foregoing contractual-duty theory rather than the active versus passive negligence theory of Stevedore's liability for indemnity was anticipated and forecast by District Judge William. C. Mathes in Hugev v. Dampskisaktieselskabet International, D.C.S.D.Cal.1959, 170 F.Supp. 601, later adopted as the settled rule for the Ninth Circuit in Metropolitan Stevedore Company v. Dampskisaktieselskabet International, 1960, 274 F.2d 875 :(affirmal of Hugev.)

■ The correlative contractual duty of Petitioners (shipowner) under the stevedoring contract is clearly set forth in Hugev in the following language:

"(1) * * * ·'

"(2) to give the stevedoring contractor reasonable warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring company in the performance of the stevedoring work aboard the ship, if the shipowner actually knows or, in the exercise of ordinary care under the circumstances, should know of the existence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring contract." Citing numerous cases, 170 F.Supp. at pages 610–611.

■ It is now settled that to have merely turned over and given to the use of Stevedore the malfunctioning and unseaworthy "lift gear" was not in and of itself a breach of Petitioners' contractual duty. Crumady, supra. This allowance, or maritime-license, of conduct. between shipowner and Stevedore is predicated upon these policy considerations discussed by Hugev:

"(a) the possibility, or even probability, of unseaworthiness after long voyages, and

. "(b) the expertise of the stevedoring company and its employees." Metropolitan, 274 F.2d at page 876.

We learn from Hugev that there must be something more on the part of the shipowner, something in the way of a want of reasonable care, towards Stevedore.

■ This Court has found that in failing to discover by reasonable inspection the unseaworthy "lift gear," the Petitioners were negligent towards Libelant and that such negligence was one of the concurrent proximate causes of Libelant's injuries.[6] Assuming that such negligence of the Petitioners towards Libelant would also constitute a breach of their implied in-fact duty in favor of Stevedore to use reasonable care in discovering latent defects in the "lift gear,"

6. "We held in Calmar Steamship Corp. v. Nacirema Operating Co., 4 Cir., 266 F. 2d 79 [1959 A.M.C. 1083], that a finding of negligence in supplying such equipment is not determinative of the shipowner's right to indemnity. His action is in contract and recovery depends upon whether his conduct has been such as to bar enforcement of the contract, and not whether he has been found negligent in regard to the longshoremen. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 [1958 A.M.C. 501]." Cited in American Export Lines v. Revel, 4 Cir., 1959, 266 F.2d 82, 87, 1959 A.M.C. 1073, 1081.

nevertheless such neglect can be of no avail or solace to the Stevedore; the reason being that we also find that the Stevedore, through a longshoreman and a hatch boss, had actual knowledge of the malfunctioning and unseaworthy condition of the "lift gear" prior to the accident.[7] This actual knowledge by Stevedore, even though independently obtained, intervenes and washes out any nonfeasance of Petitioners in performing their implied in-fact contractual duty to Stevedore. The Petitioners owed no duty to restrain the Stevedore from acting or using gear in the face or disregard of a known defect or danger. This is exactly what the Stevedore did when it used with full knowledge of its condition the malfunctioning lift gear in connection with and incidental to the handling of the ship's cargo pursuant to its contract. The inevitable failure of the gear and resulting injuries to persons in ship's service was most probable and reasonably foreseeable by an expert stevedore. This foregoing conduct of Stevedore does not carry to and falls short of meeting the requirement that the Stevedore use gear necessary and incidental to the working of the ship's cargo with reasonable safety as tested by stevedore expertise.

From the facts found in the opinion upon the segregated issue of Petitioners' liability to Libelant and this opinion, this Court concludes that Petitioners were not short in performing their obligations to Stevedore under the stevedoring contract and that Stevedore, while engaged in its stevedoring contract to load and stow cargo, breached its implied in-fact contractual obligation to use the ship's gear, in preparation and incidental to the handling of cargo, with stevedore expertise and with reasonable safety to persons engaged in ship's service, and that such breach by the Stevedore was a proximate cause of the falling of the boom and resulting injuries to Libelant. This Court further concludes that the Petitioners are entitled to reparation from the Stevedore to the full extent of its loss, expense and damage on account of Libelant's judgment aforesaid. Hugev, 170 F.Supp. at page 612.

In the event that the parties can stipulate as to the aggregate amount of Petitioners' reparations, proctor for the Petitioners may submit proposed decree and judgment order adopting the mentioned opinions of this Court as findings of fact and conclusions of law of this Court (F.R.Civ.P. 52(a), 28 U.S.C.A.) upon which to predicate a judgment in favor of Petitioners and against Stevedore for the amount of stipulated reparations.

In the event of a failure of such stipulation, the Court will, upon application of Petitioners, hear and determine the Petitioners' contentions as to amounts of reparations.

---

7. "On the day before the accident, while in the process of topping the boom involved through the use of the lift gear, the pawls had locked in an upright position and failed to properly function by falling under gravity into a locking position, and a longshoreman had used a piece of dunnage to strike and knock the pawls into position." Excerpt from prior opinion.