James **HODGSON**

v.

**LLOYD BRASILEIRO PATRIMONIO NACIONAL, Appellant,**

v.

**MURPHY-COOK & CO.**

No. 13397.

United States Court of Appeals Third Circuit.

Argued March 21, 1961.

Decided July 6, 1961.

Rehearing Denied Aug. 23, 1961.

Thomas E. Byrne, Jr., Philadelphia, Pa. (Joseph P. Green, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellant.

George E. Beechwood, Philadelphia, Pa. (Beechwood & Lovitt, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

On this appeal we are called on to determine a shipowner's right to indemnity from a stevedoring company for damages paid to a longshoreman for personal injuries sustained during the loading of a ship.

James Hodgson, a longshoreman employed by Murphy-Cook & Company, the stevedoring company, commenced an action against Lloyd Brasileiro Patrimonio Nacional ("shipowner") for personal injuries inflicted on him aboard its ship during a loading operation. The theory of Hodgson's suit was that the ship was unseaworthy and that the shipowner was negligent in failing to maintain or inspect a winch used in loading, or to warn him of its dangerous condition. The winch, operated by an employee of the stevedoring company, was part of the gear supplied by the shipowner under its written stevedoring contract. The evidence showed that on the day of and immediately prior to the accident, the brakes of the winch failed to hold, causing drafts to drift past their target. Hodgson was injured when a crate being lowered into the ship's hold struck him as the draft failed to stop when the brakes were applied.

The shipowner joined the stevedoring company as third-party defendant and maintained in the district court that Hodgson's injury was caused by a failure to properly use the winch, i. e., that the stevedoring company failed to perform its work in a safe, proper and workmanlike manner. Hodgson introduced evidence to show that the accident was caused by a defectively operating winch. The jury, in answer to a special interrogatory, found that the shipowner was not guilty of negligence but, based upon a finding of unseaworthiness, made an award in favor of Hodgson against it. That award has been satisfied and is not now before us. However, the district court's refusal to grant the shipowner's motion to enter judgment in its behalf against the stevedoring company or, alternatively, to grant a new trial form the basis for this appeal.

The shipowner contends that it is entitled to indemnity as a matter of law because the stevedoring company, once it became aware of defects in the winch, should have ceased using it until repaired. Relying on several recent Supreme Court decisions, the shipowner also asks this court to overrule its decision in Hagans v. Farrell Lines, Inc., 3 Cir., 1956, 237 F.2d 477.[1] In this regard, it asserts that the issue here is not whether a contractual right of indemnity existed, but, more precisely, what is the "effect of the admittedly existing contract." In the alternative, the shipowner contends that it is entitled to a new trial because of an erroneous charge to the jury.

Under the contract, the stevedoring company was required to "provide all necessary stevedoring labor, including winchmen, * * * and such other stevedoring supervision as are needed for

1. The shipowner refers us to Waterman S.S. Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L. Ed.2d 169; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423. 79 S. Ct. 445, 3 L.Ed.2d 413; and Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp. 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L Ed. 133.

the proper and efficient conduct of the work." It also served to impose upon the shipowner the duty to supply "booms and adequate winches, in good order and with sufficient steam or current for their efficient operation * * *." Under this agreement, the stevedoring company was not required to act as an insurer against any loss that the shipowner might suffer, or to maintain the winches. Calderola v. Cunard S.S. Co., 2 Cir., 279 F.2d 475, certiorari denied, 1960, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104. Rather, such language constitutes a contractual undertaking by the stevedoring company to perform its services in a workmanlike, proper and reasonably safe manner. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491; Calderola v. Cunard S.S. Co., supra. Whether the stevedoring company's conduct constituted a breach of this provision was, of course, a question of fact for the jury. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra.

■ The shipowner candidly concedes that if our decision in Hagans "is still good law," its contention, that the judgment must be reversed as a matter of law, cannot prevail. What makes this case different, however, is that in Hagans we held, as a matter of law, that there was no right to indemnity, whereas here, the contractual right to indemnity is admitted, but the jury, in a special interrogatory submitted to it, found that the stevedoring company had performed its services in a "workmanlike, safe, and proper manner." Faced with this fact, the shipowner in effect then takes the position in its reply brief that this finding is against the weight of the evidence. The shipowner forgets that an appellate court will not interfere with a judgment entered on a verdict returned by a jury simply because of its opinion as to the weight or preponderance of the evidence. Liberty Mutual Insurance Co. v. Thompson, 5 Cir., 1948, 171 F.2d 723; Harnick v. Lilley, 8 Cir., 1948, 167 F.2d 159; 5

Moore's Federal Practice ¶ 38.08(5), p. 89. In any event, that finding is fully supported by the record. In light of this, we certainly cannot say that the shipowner was entitled to judgment as a matter of law.

The accident occurred at approximately 9:30 a. m. on December 19, 1956. Danelli, the winch operator, testified that shortly after he commenced work on that day it became apparent that the brake on the winch was not properly functioning and that it slipped, causing drafts to drift past their target. He immediately notified one Horan, a hatch foreman for the stevedoring company, who, in turn, obtained a member of the ship's crew to repair the winch. It will be recalled that the shipowner was obliged to maintain the winches under the stevedoring contract. Another longshoreman, called as a witness for Hodgson, testified that the following then occurred:

"Q. What did you see with respect to anyone working on the winches? A. One of the crew members, whether he was the electrician or not I don't know, but you ordinarily do not get an electrician to repair the winches when you have difficulty with them. So one of the crew members was working on the winches and he was talking to Mr. Danelli at the time, to keep working them so he could make the proper adjustment.

"Q. Did you observe approximately how long he worked on the winches? A. We weren't held up over five or ten minutes at the most.

"Q. Did you see where he was working on the winches? A. Yes, he was directly behind the winch on the opposite side from where I was standing.

\*       \*       \*       \*       \*       \*

"Q. Did you see what if anything he did? A. No, I couldn't. I know he had the cover off of it, which he had to take off to work on it. Whether he worked on the brakes or the electrical part I don't

know, but they are both in the same place where he was standing and working on.

"Q. Did you observe whether he used any tools? A. He had tools in his hand when he went there, yes, sir.

"Q. Were you present after he performed his work on the winch? A. Yes, sir.

"Q. Did you observe what if anything he did or remarked in your presence after he had worked on the winches?

\* \* \* \* \* \*

"A. He was talking to the winchman while he was operating and he told him it was O. K.

"By the Court:

"Q. This was in your presence? A. Sir?

"Q. This was in your presence? A. Yes, sir.

"Q. And he was a member of the crew, did you say? A. Yes."

The winch operator testified as follows on what the crew member who repaired the winch said to him:

"Q. Did he have any words with you at any time; did he speak with you? A. He all the time—when he spoke to me—when he said—he said, 'O. K., go ahead,' he said.

"Q. When he said, 'O. K., go ahead,' did you then operate the winch? A. That's right."

He also said that the accident happened either after the very first or second attempt to raise a load following these events. He went on to say that the winch continued to drift after the repair work had been done, and that only ten or fifteen minutes elapsed before the accident occurred. Thereafter, a deck engineer repaired the winch which then operated properly and efficiently for the remainder of the loading operation.

■ It was for the jury to determine whether it was unworkmanlike for the stevedoring company to continue operating the winch, which it knew had been defective, after receiving a categorical assurance from the shipowner's crew that it was "O. K." The same can be said for the shipowner's argument that the stevedoring company, even before the accident, knew that the winch was defective and that efforts at repair had been unsuccessful. At most, it can be said that these are questions over which reasonable men could differ, and that, as such, they were properly referred to the jury.

The shipowner refers us to Calderola v. Cunard S.S. Co., 2 Cir., 279 F.2d 475, Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176, Weigel v. The M/V Belgrano, D.C.D.Or.1960, 188 F.Supp. 605, and Hugev v. Dampskisaktieselskabet International, D.C.S. D.Cal.1959, 170 F.Supp. 601, affirmed, 9 Cir., 274 F.2d 875, certiorari denied, 1960, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed. 2d 1147, which can be readily distinguished, for in none of those cases did the shipowner, as was true here, assure the stevedoring company that the known defects had been repaired.

In the alternative, the shipowner seeks a new trial, contending that the district court's charge was prejudicial because it allegedly limited the jury to finding the stevedoring company liable only if it caused the unseaworthy condition, when the jury, under the holding in Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, could have found liability if the stevedoring company brought into play the unseaworthy condition and the injury resulted as a foreseeable consequence thereof. But we think that the charge given was full and correct, for the district court specifically said,

"Then you come to the other problem. If you should conclude that this ship was unseaworthy because the winch was not in proper order, or for some other reason, or that the shipowner was negligent in the manner in which he maintained the ship or provided a place for this man to work, then and only then would you come to the problem of the steve-

doring company. If that condition existed, did something that the stevedoring company do—and when I say 'company,' of course I mean the company's employees, its representatives, anyone there on behalf of the company—have anything to do with this? Did any of them do anything which caused this unseaworthy condition? Or did they create a situation by which the ship became liable for these injuries to Mr. Hodgson?"

The shipowner, in any event, was not entitled to a charge in this regard, for it defended in the district court on the theory that "improper operation by Murphy's employees of a *sound and properly operating winch was the responsible cause of the accident,*" and "*there was nothing whatever the matter with the winch,*" thereby denying the existence of an unseaworthy condition that could have been called into play. (Emphasis supplied.)

The judgment of the district court will be affirmed.

### On Petition for Rehearing.

Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

PER CURIAM.

The petition for rehearing filed in this case presents nothing that was not fully argued and briefed heretofore and will be denied.

BIGGS, Chief Judge (dissenting).

In view of Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, and Waterman Steamship Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, it would seem inevitable that we reappraise our decision in Hagans v. Farrell Lines, Inc., 3 Cir., 1956, 237 F.2d 477. See also Calmar Steamship Corp. v. Nacirema Operating Co., 4 Cir., 1959, 266 F.2d 79. The case at bar is one wherein "the bring into play" doctrine is applicable

and Hagans should be overruled. Judgment should be entered in favor of Brasileiro and against Murphy, or a new trial granted.

For these reasons I must dissent from the order denying rehearing en banc.