NEDERLANDSCH – AMERIKAANSCHE – STOOMVAART–MAATSCHAPPIJ; HOLLAND–AMERICA LINE, Appellant,

v.

Mrs. Connie VASSALLO et al., Appellees.

No. 13965.

Court of Civil Appeals of Texas.

Houston.

Feb. 14, 1963.

Rehearing Denied March 14, 1963.

Fulbright, Crooker, Freeman, Bates & Jaworski, S. G. Kolius, Carl G. Stearns, Ed Bluestein, Jr., Houston, for appellant.

Mandell & Wright, Arthur J. Mandell, Houston, for appellees Connie Vassallo and Minors.

E. D. Vickery, Gus A. Schill, Jr., Houston, Royston, Rayzor & Cook, Houston, of counsel for appellee Texports Stevedoring Co., Inc.,

COLEMAN, Justice.

This is an appeal by Holland-America Line from a judgment denying it indemnity against Texports Stevedoring Company, Inc. Both Holland-America Line and Texports Stevedoring Company, Inc. have appealed from that portion of the trial court's judgment awarding interest to the plaintiffs, the widow and surviving children of Roland Vassallo.

Roland Vassallo received injuries resulting in his death while employed as a stevedore by Texports aboard the SS Eemdyk, which was owned and operated by Holland-America Line. Mrs. Connie Vassallo brought suit for damages against Holland-America Line, who impleaded Texports as a third party defendant to obtain indemnity under the applicable federal maritime law.

The answers made by a jury established that Vassallo met his death from a combination of causes: the defective condition of one of the vessel's winches, the negligence of the ship owner, the negligence of Texports, and Vassallo's contributory negligence. On June 26, 1959, judgment was entered that plaintiffs take nothing. On appeal the judgment of the trial court was reversed by the Supreme Court of Texas and the case was remanded to the trial court with instructions to enter judgment in favor of the plaintiffs in accordance with the opinion. Vassallo v. Nederl-Amerik Stoomv Maats Holland, Tex., 344 S.W.2d 421.

On September 20, 1961, the trial court entered its second judgment awarding plaintiffs damages against the ship owner. The judgment denied the ship owner's plea for indemnity and awarded interest on the damages at the rate of 6% from June 26, 1959, the date of the first judgment.

Holland-America Line has predicated its appeal on two points: (1) The Trial Court erred in entering judgment that the shipowner take nothing from the Stevedore in the Shipowner's third party action for indemnity because the findings of the jury established under the controlling maritime law that the Stevedore breached its implied contractual warranty of safe and workmanlike service and those findings required the entry of judgment for the Shipowner; and

(2) The Trial Court erred in entering judgment that interest on the plaintiffs' recovery was to accumulate from June 26, 1959, the date of the original judgment (wherein plaintiffs took nothing), rather than from September 20, 1961, the date of the judgment which first created an obligation on the part of appellant to pay damages to the plaintiffs.

The following facts are established by the answers to special issues submitted to the jury:

Special Issues Nos. 1 and 2: That the port winch serving the forward part of No. 5 hatch was defective, which was a proximate cause of the accident.

Special Issues Nos. 3 and 4: That the shipowner negligently failed to keep this winch in repair and such failure was a proximate cause of the accident.

Special Issues Nos. 5, 6 and 7: That the shipowner negligently failed to supply Vassallo with a reasonably safe place to work, which was a proximate cause of the accident.

Special Issues Nos. 15 and 16: That Vassallo failed to keep a proper lookout for his own safety which was a proximate cause of the accident.

Special Issue Nos. 17, 18 and 19: That Vassallo negligently gave the operator of the port winch a signal to operate the winch while the port winch line was attached to the beam bridle and while his hand was in a position to be caught between the beam bridle chain and the beam, which was a proximate cause of the accident.

Special Issues Nos. 21 and 22: That Vassallo negligently failed to remove his hand from between the beam bridle chain and the beam, which was a proximate cause of the accident.

Special Issues Nos. 30 and 31: That the Stevedore negligently continued to use the winch with knowledge that it was defective, which was a proximate cause of the accident.

Special Issue Nos. 32 and 33: That the Stevedore negligently continued to use the winch with knowledge that the shipowner had not kept it in repair, which was a proximate cause of the accident.

Special Issues Nos. 34 and 35: That the Stevedore negligently continued stevedoring operations with knowledge that Vassallo had not been furnished a reasonably safe place to work, which was a proximate cause of the accident.

Special Issues Nos. 38 and 39: That the Stevedore's winch operator, Clyde Townsend, moved the winch control lever into hoist position just before the accident occurred, though this was not found to be negligent.

Special Issues Nos. 42, 43 and 44: That the Stevedore's winch operator, Clyde Townsend, knew or should have known the port winch had an "on" and "off" switch, and that just before the accident he left his winch without cutting off such switch, though this was not found to be negligent.

Special Issues Nos. 46 and 47: That the Stevedore's winch operator, Clyde Townsend, just prior to the accident failed to make such use of the foot brake on the port winch as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances, though this was not found to be negligent.

Special Issues Nos. 49, 50, 51, 52 and 53: That the port winch was defective when turned over to the longshoremen, that the shipowner knew or should have known this for a sufficient period of time for repairs to have been made, that it was negligent in not making repairs and such negligence was a proximate cause of the accident.

Special Issues Nos. 54, 55 and 56: That the shipowner negligently permitted loading operations to continue after it knew or should have known of the defective condition of the port winch, which was a proximate cause of the accident.

Special Issues 57, 58, 59 and 60: That the shipowner failed to supply Vassallo with a reasonably safe place to work, that it knew or should have known the place was not reasonably safe, and that it negligently failed to make the place reasonably safe after it knew or should have known that it was not safe, which failure was a proximate cause of the accident.

Special Issues Nos. 61, 62 and 64: That the shipowner negligently permitted loading operations to continue after it knew or should have known that the place supplied to Vassallo was not reasonably safe, which was a proximate cause of the accident.

It was stipulated that there was a written contract between Texports Stevedoring Company, Inc. and Holland-America Line for the Stevedoring work aboard the SS Eemdyk on May 26, 1957, containing many provisions, among which is the following: "The work at all times to be under direct supervision of the agents of Holland America Line in consultation with their representatives, who will decide as to the number of gangs and hatches to be worked, storage of cargo * * *", etc. It was also stipulated that the contract contained no provision whereby either party assumed any responsibility for damages resulting from death other than that assumed by Texports under applicable Workmen's Compensation Acts. The contract document was not introduced into evidence.

■ The liability of the stevedore to indemnify the ship owner can arise only by reason of breach of contract. American Mutual Liability Ins. Company v. Matthews, 2 Cir., 1950, 182 F.2d 322; Halcyon

Lines v. Haenn Ship Ceiling & Refitting Corporation, 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. Negligence of the stevedore is pertinent only insofar as it amounts to a breach of contract. Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Here the jury found that the stevedore continued to use the defective winch with knowledge of the defect and that such conduct was negligent and a proximate cause of the injury to the longshoreman (for which the ship was required to pay damages).

In the Ryan case, supra, the court held:

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service."

In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, 78 S.Ct. 438, 442, 2 L.Ed.2d 491, the court said:

"We believe that respondent's contractual obligation to perform its duties with reasonable safety related not only to the handling of cargo, as in

Ryan, but also to the use of equipment incidental thereto, such as the winch shelter involved here. [citing cases] If in that regard respondent rendered a substandard performance which led to foreseeable liability of petitioner, the latter was entitled to indemnity absent conduct on its part sufficient to preclude recovery."

The doctrine of the Ryan case was further extended in Crumady v. Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. In this case the Supreme Court pointed out that while the vessel was unseaworthy in that a circuit breaker attached to a winch was set to cut off at a load considerably in excess of the safe working load of the cargo gear, the negligence of employees of the stevedore in moving a boom brought into play the unseaworthy condition of the circuit breaker, thereby causing the accident. The court held that this negligence amounted to a breach of the warranty of workmanlike service.

The jury has found that the continued use of the defective winch with knowledge of its defective condition was negligence on the part of the stevedoring company. Applying the doctrine of the Weyerhaeuser case, the stevedoring company reasonably could foresee that such conduct would cause an accident for which Holland-America Line would be liable because of the unseaworthy condition of the winch. The stevedoring company questions the conclusion that the jury finding of negligence necessarily presupposes a finding of the violation of a duty owed by it to the ship owner as well as a violation of a duty owed to the longshoreman. It contends that the contractual duty to unload the ship with reasonable safety, as applied to its use of equipment supplied by the ship, extends no further than to require it to operate such defective equipment with reasonable care. It contends that its duty to the ship does not require a refusal to use defective equipment. The contention seems to be that the stevedoring com-

pany's duty of reasonable care to its employee might be breached by use of defective equipment even though the equipment was used with the utmost care, but that the use of defective equipment under such circumstances would not constitute a breach of its contractual duty to the ship to perform the stevedoring operations in a reasonably safe and workmanlike manner, and that evidence sufficient to persuade the jury that its conduct was negligent insofar as the employee was concerned would not necessarily convince the jury that the same conduct would be negligent insofar as the ship is concerned. While this objection to the court's charge was made in the trial court, no specific counterpoint is raised on appeal. Texports argues that the finding should not be held a finding of negligence toward the ship and that the appellants have not secured proper jury findings of breach of contract and, by failing to request submission of proper issues, have waived recovery on the theory of breach of contract. In support of their theory the contractor has cited Smith v. Pan-Atlantic Steamship Corporation, D.C., 161 F.Supp. 422, aff'd per curiam 254 F.2d 600, 3rd Cir., 1958, in which the court said that it may have been negligence for the stevedore to continue to use a defective winch rather than to walk off the job, but it was "in furtherance of his contract rather than a breach of it, and the shipowner could hardly hold him liable for trying to complete the work."

In Hodgson v. Lloyd Brasileiro Patrimonio Nacional; Hodgson v. Murphy-Cook & Co., 294 F.2d 32, 3rd Cir., 1961, cert. den. 369 U.S. 848, 82 S.Ct. 931, 8 L.Ed.2d 8, 1962, the court held that whether the stevedoring company's conduct in continuing to operate a winch known to be defective constituted a breach of its contract to perform its services in a workmanlike, proper and reasonably safe manner was a question of fact for the jury, as was the question of whether its conduct "brought into play" the unseaworthiness of the vessel. In its opinion the court calls attention

to the fact that the stevedoring company received "a categorical assurance from the ship owner's crew that it (the winch) was 'O.K.'" and on this basis distinguishes Calderola v. Cunard S. S. Co., 2 Cir., 279 F.2d 475; Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 1960, 278 F.2d 176; Weigel v. The M/V Belgrano, D.C.D.Or. 1960, 188 F.Supp. 605, and Hugev v. Dampskisaktieselskabet International, D.C. S.D.Cal.1959, 170 F.Supp. 601, affirmed, 9 Cir., 274 F.2d 875, cert. den. 1960, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147.

In the Hugev case, supra, the court said:

"* * * the obligation is one implied in fact, and not in law, and the content of this implied-in-fact obligation on the part of the stevedoring contractor is to perform the stevedoring service for his customer, the shipowner, in a workmanlike manner and with reasonable safety to persons and property. * * *

"* * * It includes also the duty to suspend the loading or unloading operations on its own initiative, and thus to avoid injury or damage, whenever the stevedore realizes that it would be unsafe under the circumstances to proceed. United States v. Arrow Stevedoring Co., 9 Cir., 1949, 175 F.2d 329, certiorari denied, 1949, 338 U.S. 904, 70 S.Ct. 307, 94 L.Ed. 557; The Adah, 2 Cir., 1919, 258 F. 377, 380; The Robert R., 2 Cir., 1918, 255 F. 37, 39; Smith v. Nicholson Transit Co., D.C. W.D.N.Y.1941, 39 F.Supp. 795, 797. So if the stevedoring contractor renders a substandard performance which foreseeingly leads to the shipowner's liability to a longshoreman, the shipowner would be 'entitled to indemnity absent conduct on its part sufficient to preclude recovery.' [citing authority]."

■ The jury's finding in this case that 'Texports' conduct in continuing to use a defective winch with knowledge of the defective condition was negligence and a proximate cause of the accident constitutes findings of fact sufficient to require the conclusion of law that Texports had violated its warranty to perform its services with reasonable safety to members of its working force.

In the Hugev case that court also held that a material breach of the contract on the part of the ship owner would preclude his recovery of indemnity under the rule of the Weyerhaeuser case, supra. It held that the implied warranty of seaworthiness does not extend to the stevedoring contractor and that the obligations due the contractor by the ship owner must be found in its contract, either expressly, or implied in fact from the circumstances surrounding the contract and its performance.

■ The court in the Hugev case found three implied-in-fact obligations on the part of the ship owner, only one of which is applicable under the facts of this case. This obligation on the ship owner is "to exercise ordinary care under the circumstances to place the ship on which the stevedoring work is to be done, and the equipment and appliances aboard ship, in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care under the circumstances to load or discharge the cargo, as the case may be, in a workmanlike manner and with reasonable safety to persons and property."

■ Merely furnishing defective equipment is not such a breach of the contract on the part of the ship owner as to forfeit any right to indemnity which he might have by reason of a breach of warranty on the part of the stevedoring contractor. Crumady v. Joachim Hendrik Fisser, supra; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra.

■ While the jury found the ship owner negligent in certain respects, negli-

gence will not defeat the right to indemnity unless such negligence constitutes a breach of the contract with the stevedoring contractor. Conduct which might be a breach of a duty owed by the ship owner to a seaman or longshoreman would not necessarily amount to a breach of this contract. Thus, in Weyerhaeuser breach of a legal duty to inspect, detect and correct an unsafe condition did not defeat the ship owner's right to indemnity.

The jury found that after the ship owner knew, or should have known, of the defective condition of the winch, he negligently failed to make necessary repairs, but the stipulation of the parties does not show a contractual duty to make repairs. While no case has been cited holding that there is implied in fact a contractual duty to make repairs, the holding in the Hugev case impliedly negatives such a duty.

The jury found that the ship owner also permitted loading operations to continue after he knew, or should have known, that the winch was defective and that this constituted negligence, and a proximate cause of the accident. In support of the judgment it will be assumed that the trial court concluded that this conduct was a breach of that provision of the contract providing that the work was to be done under the direct supervision of agents of Holland-America Line.

In Von Rosenberg v. Lovett, Tex.Civ. App., 173 S.W. 508, writ ref., the court said: "To supervise does not mean to do the work in detail, but to see that it is done. It means to oversee, with power of direction."

A common meaning of "supervise" is "to superintend," which was defined by the Supreme Court of Texas in Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, 240 S.W. 899, as meaning: "To have charge and direction of; to direct the course and oversee the details; to regulate with authority; to manage; to have or exercise the charge and oversight of; to oversee with the power of direction; to

take care of with authority; to oversee; to overlook."

The reasoning of the Supreme Court of the United States in the Ryan case, supra, requires a holding that where there is an agreement to supervise the stevedoring operation, there is implied in fact a covenant to carry out this work in a careful and workmanlike manner. A negligent failure to stop the work after discovering that the winch was defective, or after receiving notice of its defective condition, would as a matter of law amount to a breach of this covenant. While in this case the ship owner did not assure the stevedoring company that the winch was safe (as in the Hodgson case, supra), the company had a contractual right to expect that the ship's officers would discover unsafe conditions and stop the work until they were corrected. This breach of contract is conduct on the part of the ship owner sufficient to preclude recovery of indemnity. Weyerhaeuser Steamship Company v. Nacirema Operating Co., supra; Hodgson v. Lloyd Brasileiro Patrimonio Nacional; Hodgson v. Murphy-Cook & Co., supra; Hugev v. Dampskisaktieselskabet International, supra.

It might be argued that the agreement to supervise applied only to such matters as determining the number of gangs, hatches to be worked and stowage of cargo. Since the contract provides that "The *work at all times* to be under direct supervision * * *," it seems reasonable to conclude that *all* of the work would be supervised by agents of Holland-America Line.

On June 26, 1959 the trial court entered its original judgment in this case denying plaintiffs recovery. The Supreme Court reversed and remanded the cause with instructions to enter judgment for plaintiffs in accordance with its opinion. This was an instruction to enter the judgment which the trial court should have entered on July 26, 1959. The judgment properly included interest at the rate of 6% per annum from that date. Houston Gas

& Fuel Company v. Perry, 127 Tex. 102, 91 S.W.2d 1052, opinion adopted; Texas Power Corp. v. Kuehler, Tex.Com.App., 52 S.W.2d 76; Smith v. American Fire & Casualty Company, Tex.Civ.App., 242 S.W. 2d 448; Parkerson v. American Hospital & Life Ins. Co., Tex.Civ.App., 322 S.W. 2d 27, writ dism.; D. C. Hall Transport, Inc. v. Hard, Tex.Civ.App., 355 S.W.2d 257, ref. n. r. e. Tex., 358 S.W.2d 117.

The judgment of the trial court is affirmed.