

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00551-CV

Jesus **VIRLAR**, M.D., and Gonzaba Medical Group a/k/a GMG Health Systems Associates,
P.A. a/k/a GMG Health Systems P.A.,
Appellants

v.

Maria Esther **CARR**, as Independent Administrator and Personal Representative of the Estate of
Jo Ann Puente, Deceased,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-04936
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Lori I. Valenzuela, Justice
               Lori Massey Brissette, Justice
               H. Todd McCray, Justice

Delivered and Filed: April 30, 2026

REMITTITUR SUGGESTED

This appeal arises from a judgment entered on remand from the Texas Supreme Court in a

medical malpractice action. After reviewing the record and the parties' briefing, we conclude the

trial court erred by allocating an excessive amount from the jury's award as a lump sum in its

judgment on remand. Nevertheless, because we conclude that this error can be cured by remittitur

and that the trial court did not reversibly err in any other respect, we suggest a remittitur of

$533,038.51. If within twenty days of the date of this opinion, appellee files in this court a remittitur of $533,038.51, we will modify the trial court's judgment in accordance with this opinion and affirm the judgment as modified. If appellee does not timely file the suggested remittitur, the trial court's judgment will be reversed and the cause remanded for entry of a proper judgment consistent with this opinion. *See* TEX. R. APP. P. 46.3.

## BACKGROUND

In 2011, Jo Ann Puente underwent "Roux-en-Y" gastric-bypass surgery performed by Dr. Nilesh Patel. Puente developed complications and was admitted to the intensive care unit at Metropolitan Methodist Hospital and ordered to take nothing by mouth. Dr. Jesus Virlar, who was employed by GMG Health Systems Associates, P.A. a.k.a. and d.b.a. Gonzaba Medical Group ("Gonzaba"), assumed care for Puente. Evidence at trial showed that, although nurses noted Puente's difficulty walking, dizziness, continued vomiting, and "fixed gaze," Dr. Virlar did not read their notes and was unaware of the symptoms. Dr. Virlar failed to order thiamine supplements, which Puente's expert witness testified led her to develop Wernicke's disease, a brain dysfunction associated with thiamine deficiency. The disease progressed to a more debilitating brain disorder, Korsakoff's syndrome.

Puente, her minor daughter, C.P., and her mother, Maria Esther Carr, sued Dr. Patel, Dr. Virlar, Gonzaba, Metropolitan Methodist Hospital, and other healthcare providers, including Dr. Manuel Martinez, another physician employed by Gonzaba. Puente sought damages for physical pain, mental anguish, loss of earning capacity, and medical expenses, while C.P. and Carr sought damages for loss of services and loss of consortium. Before trial, Carr and C.P. either settled[1] or

---

[1] C.P. and Carr settled with all defendants except Dr. Virlar, Dr. Martinez, and Gonzaba.

nonsuited all of their claims. Puente also entered into a settlement with several of the defendants, leaving only her claims against Dr. Virlar, Dr. Martinez and Gonzaba for trial.

The jury found Dr. Virlar and Dr. Patel negligent, attributing 60% of the responsibility to Dr. Virlar and 40% to Dr. Patel. It did not find Dr. Martinez negligent. The jury awarded Puente $133,202 for loss of past earnings, $888,420 for loss of future earning capacity, and $13,262,874.86 for future medical expenses.

The trial court rendered judgment for Puente and against Dr. Virlar and Gonzaba, as Dr. Virlar's employer, and denied their motion for new trial. Dr. Virlar and Gonzaba also moved for a settlement credit, arguing that C.P.'s $3.3 million settlement with Metropolitan Methodist Hospital should reduce Puente's recovery under Chapter 33 of the Texas Civil Practice and Remedies Code. While the trial court rejected that argument, it granted a credit of $200,000 for Puente's settlement with Dr. Patel. The trial court also denied Dr. Virlar and Gonzaba's motion for periodic payment of the award for future medical expenses. The trial court's judgment awarded Puente the entire $14,109,349.02 in a lump sum. Dr. Virlar and Gonzaba appealed, and Puente passed away on March 30, 2020, while the appeal was pending.

**First Appeal**

On rehearing, this court largely affirmed the trial court's judgment, reversing only to suggest an $8,000 remittitur of the award for lost future earning capacity for lack of evidence, which Puente accepted. *Virlar v. Puente*, 613 S.W.3d 652, 662, 682–85 (Tex. App.—San Antonio 2020). This court affirmed the denial of a credit for C.P.'s settlement, holding such a credit under Chapter 33 would be unconstitutional as applied. *Id.* at 685–697. Finally, this court affirmed the denial of periodic payments, holding that Dr. Virlar and Gonzaba did not present sufficient

evidence for the trial court to grant payments. *Id.* at 697–704. Dr. Virlar and Gonzaba then filed a petition for review, which the Texas Supreme Court granted.

The Texas Supreme Court affirmed the judgment in part and reversed in part, holding the judgment erred in two respects. First, the Court held Chapter 33 required a dollar-for-dollar credit for C.P.'s settlement and this application of Chapter 33 is not unconstitutional. *Virlar v. Puente*, 664 S.W.3d 53, 60–61 (Tex. 2023). Thus, the approximately $14.1 million total damages awarded to Puente by the trial court must be reduced by the dollar amount of C.P.'s settlement with Metropolitan Methodist Hospital for $3.3 million, resulting in Puente's recovery being reduced to approximately $10.8 million total. *Id.* at 61. Second, the Texas Supreme Court held there was sufficient evidence to establish that the Texas Medical Liability Act (TMLA) required the trial court to order at least partial periodic payments for future medical expenses. *Id.* at 65. The Texas Supreme Court remanded the case to the trial court "to form a proper judgment on these issues of damages." *Id.* at 66.

**Judgment on Remand**

On remand, the parties filed competing proposals for calculating the new judgment, and the trial court held a hearing. The trial court expressed its understanding that on remand, it must "go back to the date of the jury verdict and the judgment, and take it as it is then," i.e. when Puente was still living. After the hearing and after additional briefing by the parties, the trial court issued its judgment on remand, in which it applied the credit for C.P.'s settlement, ordered a portion of the damages to be paid in a lump sum upon entry of judgment and ordered that further damages, specifically future medical expenses, be paid via scheduled periodic payments. Dr. Virlar and Gonzaba requested findings of fact and conclusions of law, and the parties filed competing motions

to modify the judgment. The trial court issued amended findings of fact, and the motions to modify the judgment were overruled by operation of law. Dr. Virlar and Gonzaba timely appealed.

## Supplemental Findings

Because the judgment and the amended findings failed to precisely quantify the dollar amount of two components of the lump sum, this court abated this appeal and remanded the case to the trial court, ordering the trial court to set out the exact dollar amounts in the lump sum for (1) litigation expenses and costs and (2) the total interim medical costs for the period between the time of the trial and the date the first periodic payment would have been due. *See* TEX. R. APP. P. 44.4(a). A supplemental clerk's record was filed, containing the trial court's "Supplemental Findings Pursuant to Court of Appeals' Order," which quantified these dollar amounts. The supplemental record also included further briefing by the parties in the trial court before the supplemental findings were issued.

### DISCUSSION

Dr. Virlar and Gonzaba bring seven issues on appeal, which we have reordered as follows: (1) whether this appeal should be abated or the judgment is void because Puente's estate lacked a representative in the trial court on remand; (2) whether the trial court erred by awarding an excessive lump sum recovery; (3) whether the trial court erred by awarding recovery for future medical expenses after the date of Puente's death; (4) whether the trial court erred in making an excessive award of future medical expenses that is inconsistent with the jury's verdict; (5) whether the trial court erred by awarding postjudgment interest as of the date of the original judgment rather than the date of the judgment on remand; (6) whether the trial court erred in issuing amended findings supported by factually insufficient evidence; and (7) whether the trial court improperly took judicial notice of facts about Dr. Virlar's medical license.

**I.      Abatement is unnecessary and the remand judgment is not void.**

In their first issue, Dr. Virlar and Gonzaba urge us to abate this appeal or render the trial court's judgment void because Puente's estate lacked a representative in the trial court on remand. They argue the trial court was required to formally substitute Puente's estate representative as a party and render judgment for Puente's estate representative rather than for Puente. They argue we must abate this appeal and order the trial court to determine the appropriate representative for Puente's estate and then substitute that representative for purposes of rendering the judgment. In the alternative, they argue that the remand judgment is void because it rendered judgment for Puente instead of Puente's estate.

We disagree.

**A.  Abatement is unnecessary.**

When an appellate court reverses a lower court's judgment and remands the case to the trial court, as the Texas Supreme Court did here, "the trial court is authorized to take all actions that are necessary to give full effect to the appellate court's judgment and mandate." *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013). "But the trial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate." *Id.*

Here, the Texas Supreme Court's judgment remanding this case "was an instruction to enter the judgment which the trial court should have [originally] entered[.]" *Id.* at 241 (quoting *Nederlandsch–Amerikaansche–Stoomvaart–Maatschappij; Holland–Am. Line v. Vassallo*, 365 S.W.2d 650, 656 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.)). Therefore, the trial court on remand had authority to consider the parties' arguments regarding the proper calculation of damages in light of the Court's opinion and then render the corrected judgment. The trial court did

just that: the parties filed competing proposals for calculating the judgment on remand, and at the damages hearing, the trial court expressed its understanding that on remand it must "go back to the date of the jury verdict and the judgment, and take it as it is then," i.e. when Puente was still living. The remand judgment reflected this understanding.

Nevertheless, Dr. Virlar and Gonzaba argue abatement is necessary by pointing to their first filing in the trial court on remand: a suggestion of death and application for a writ of scire facias, requesting that the trial court issue a writ of scire facias "for the administrator, executor, or heir of Jo Ann Puente to appear and prosecute this action pursuant to Texas Rule of Civil Procedure 151." Their application[2] stated that they are aware a probate court had appointed Carr as the administrator of Puente's estate in February of 2022. The probate court's order appointing Carr as the estate representative was also filed in the trial court. But, even though Carr, "in her capacity as 'possible heir'" of Puente, responded by filing a special appearance and motion to quash the application, arguing in part that Carr "should not be made a party to the suit in the capacity in which she was served" because Carr is not an "heir" of Puente, she did appear throughout the remand proceedings describing herself as "independent administrator and personal representative of the estate of Jo Ann Puente."

By doing so, she entered a general appearance. *See Hegwer v. Edwards*, 527 S.W.3d 337, 341 (Tex. App.—Dallas 2017, no pet.) ("A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court.") (citing *Exito Elec. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004)). Therefore, Rule 151 did not require

---

[2] Dr. Virlar and Gonzaba attached discovery requests to their application, requesting that Puente's estate (1) produce a copy of Puente's death certificate and copies of all medical records and bills from between the first trial court judgment and Puente's death, and (2) admit Puente died on March 30, 2020.

the trial court to issue a writ of scire facias.[3] *See* TEX. R. CIV. P. 151 (stating that if "the heirs, or the administrator or executor" of decedent plaintiff do *not* appear, the trial clerk shall issue a scire facias, requiring the heirs or the administrator or executor of decedent to appear and prosecute the suit).

Given Carr's appearance as independent administrator and personal representative of the estate of Jo Ann Puente, given that the probate court's order appointing Carr as administrator of Puente's estate was filed as part of the record, and given that Dr. Virlar and Gonzaba never argued that Carr was an inappropriate representative of Puente's estate, abatement is unnecessary. The reliance on *Gantt v. Harris County*, 674 S.W.3d 553, 556–58 (Tex. App.—Houston [1st Dist.] 2023, no pet.) is inapposite because here, unlike in *Gantt*, the record is clear as to the estate representative's identity and involvement in the case.

### B. The remand judgment is not void.

Dr. Virlar and Gonzaba argue in the alternative that the remand judgment is void because it rendered judgment for Puente instead of Puente's estate, again asserting that no representative was a party to the action.[4] Carr counters this is a mere technicality which does not render the judgment void, noting Carr had moved in the trial court for an order of substitution. As set forth above, we have concluded Carr represented Puente's estate as the representative on remand, through numerous court filings and by arguing on the estate's behalf at the damages hearing. Further, we can infer that the trial court's remand judgment awarded damages to Puente rather than her estate representative because the trial court sought to follow the Texas Supreme Court's instructions, by entering the judgment which the trial court should have entered when it signed its

---

[3] The trial court did not grant the application for a writ of scire facias, which was overruled by operation of law.

[4] A decedent's estate "is not a legal entity and may not properly sue or be sued as such." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 786 (Tex. 2006). A suit on behalf of an estate must thus be brought by the personal representative of the estate. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

original judgment. *See Phillips*, 407 S.W.3d at 241; TEX. R. CIV. P. 156 ("When a party in a jury case dies between verdict and judgment, or a party in a non-jury case dies after the evidence is closed and before judgment is pronounced, judgment shall be rendered and entered as if all parties were living."); *Smith v. Kingdom Investments, Ltd.*, No. 14-20-00447-CV, 2022 WL 3725070, at *1 (Tex. App.—Houston [14th Dist.] Aug. 30, 2022, pet. denied) (affirming judgment rendered as though party were still living under Rule 156); *Tolar v. Tolar*, No. 12-14-00228-CV, 2015 WL 2393993, at *1–2 (Tex. App.—Tyler May 20, 2015, no pet.) (same).

In these circumstances, the remand judgment is not void. "[A] judgment involving 'the estate' may validly bind the personal representative of the estate if he appears and participates in the case in his official capacity as personal representative of the estate." *Delgado v. Garza*, 2018 WL 6187077, *5 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (citing *Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex. App.—Houston [1st Dist.] 1991, no writ)); *see Charles v. Estate of Kornbacher*, No. 01-23-00125-CV, 2024 WL 1862852, at *4 (Tex. App.—Houston [1st Dist.] Apr. 30, 2024, pet. denied) (concluding judgment rendered in favor of estate was valid and constituted a "judgment in favor of Eric Roberts as the representative of the Estate of Rose Kornbacher."). Given Carr's active participation in the proceedings on remand as estate representative, the trial court's remand judgment was valid and constitutes a judgment in favor of Carr as the estate's representative. *See Kornbacher*, 2024 WL 1862852, at *4. We overrule Dr. Virlar and Gonzaba's first issue.

## II. The lump sum recovery in the remand judgment was excessive but can be cured by remittitur.

Dr. Virlar and Gonzaba further assert the trial court erred by allocating an excessive lump sum recovery that cannot be cured by remittitur. Specifically, they assert the lump sum in the

remand judgment awarded an excessive amount for Puente's interim medical costs, excessively awarded attorney's fees, and erroneously awarded litigation expenses and costs.

Under Texas Civil Practice & Remedies Code section 74.503(b), future damages may be ordered to "be paid in whole or in part in periodic payments rather than by a lump sum payment." TEX. CIV. PRAC. & REM. CODE § 74.503(b). The trial court's original judgment provided that Puente receive the entire jury award in a lump sum. In the previous appeal, the Texas Supreme Court held the TMLA required the trial court to order at least partial periodic payments for future medical expenses, remanding for the trial court to determine how much of the award of future medical expenses "should be payable in a lump sum upon judgment, with the remainder to be paid periodically." *Virlar*, 664 S.W.3d at 64. The Texas Supreme Court noted that when making this determination, the trial court could consider factors including Puente's request that "costs, attorney's fees, and other expenditures to be incurred soon after trial be payable immediately." *Id.*

The trial court enjoys considerable discretion in structuring such periodic payments under the Texas Medical Liability Act (TMLA). *Id.* The TMLA "does not require such granular evidence that only one payment plan could be fashioned." *Id.* The trial court's determination of which portions of the jury's award are to be owed in a lump sum, and which will be paid periodically, is subject to an abuse of discretion standard of review. *See id.*; *Columbia Valley Healthcare Sys., L.P. v. A.M.A. ex rel. Ramirez*, 654 S.W.3d 135, 143 (Tex. 2022); *Regent Care of San Antonio, L.P. v. Detrick*, 610 S.W.3d 830, 837–38 (Tex. 2020). Nevertheless, "the court has no discretion to 'contradict the jury's findings on any issues submitted to it.'" *Columbia*, 654 S.W.3d at 143 (quoting *Regent Care*, 610 S.W.3d at 837–38).

We first explain how the trial court calculated the remand judgment, concluding that the trial court did not abuse its discretion in determining which categories of damages, fees, and costs

should be included in the lump sum. We then address Dr. Virlar and Gonzaba's arguments regarding the individual components of the lump sum, concluding the lump sum allocation was excessive but can be cured by remittitur.

### A. How the trial court calculated the remand judgment

The trial court began with the jury's award of $14,285,505.86 total, composed of:

- $133,202 for loss of past earnings;
- $888,420 for loss of future earning capacity; and
- $13,262,874.86 for future medical expenses.

The trial court then applied several adjustments to these amounts. First, it applied the voluntary remittitur of $8,000 from the first appeal to adjust the award for loss of future earning capacity to $880,429. Next, it calculated the pre-judgment interest of 5% on the award for loss of past earnings, adding $9,415.38 to this award. Then, the court followed the Texas Supreme Court's instruction and applied a dollar-for-dollar credit for Puente's daughter C.P.'s $3.3 million dollar settlement. *Virlar*, 664 S.W.3d at 60–61. The court also applied a separate $200,000 dollar credit for Puente's settlement with Dr. Patel and his associated defendants. In doing so, the trial court correctly applied these settlement credits first to the past damages and pre-judgment interest, bringing that portion of the award to $0. *See Regent Care*, 610 S.W.3d at 834 (citing *Battaglia v. Alexander*, 177 S.W.3d 893, 908 (Tex. 2005)). The trial court then applied the remaining settlement credit balance to the jury's awards for loss of future earning capacity and future medical expenses pro rata, reducing lost-earning-capacity damages to $671,415.15, and future medical expenses to $10,115,506.09, for a final judgment totaling $10,786,921.24.

Then, in accordance with the Texas Supreme Court's opinion, the trial court divided the $10,786,921.24 total judgment between a lump sum payment and periodic payments for the remaining future medical expenses. The trial court first determined the lump sum should be

composed of the damages for lost future earning capacity, interim medical costs for a little over thirteen months from the date of the original judgment, and litigation expenses and costs. The trial court then attempted to determine Puente's attorney's fees to ensure that they could be satisfied from the lump sum award. *See Virlar*, 664 S.W.3d at 64; TEX. CIV. PRAC. & REM. CODE § 74.507; *Columbia*, 654 S.W.3d at 144 n.8 (noting obligation to pay attorney's fees is "one kind of evidence that the court should consider on remand when determining how much of the total award should be paid as a lump sum.").[5] After accounting for that portion of the future payments that would be moved to the lump sum award to facilitate Puente's payment of attorney's fees, the trial court allocated $5,880,549.50 total as the lump sum, scheduling out the remaining $4,906,371.74 in future medical expenses as periodic payments for every year of Puente's projected life expectancy based on the trial evidence, from 2019 to 2048.

Allocation of these categories of damages, fees, and costs into the lump sum accords with both the jury's findings and the Texas Supreme Court's instruction that the trial court could consider Puente's request that "costs, attorney's fees, and other expenditures to be incurred soon after trial be payable immediately." *Virlar*, 664 S.W.3d at 64; *see Columbia*, 654 S.W.3d at 143; *Regent Care*, 610 S.W.3d at 837–38. Therefore, the trial court did not abuse its discretion by allocating these categories in the lump sum. *See Virlar*, 664 S.W.3d at 64. But, we must still address each component separately to determine if the appropriate measure of damages was used within each category.

Before we do so, though, we must recognize an error in the trial court's calculations. There are four categories of damages included in the trial court's lump sum award: (1) lost future earning

---

[5] The remand judgment explains that the $5,880,549.50 lump sum total includes: (1) the damages for loss of future earning capacity; (2) the interim medical costs between the date of the original judgment (November 28, 2017) and January of 2019; (3) litigation expenses and costs; and (4) attorney's fees.

capacity, (2) interim medical expenses; (3) litigation costs; and (4) attorney's fees. While the trial court gave exact dollar figures for lost earning capacity damages and attorney's fees included in the lump sum, it did not set forth the dollar amounts for litigation expenses and costs or interim medical costs. We therefore abated the appeal and remanded the case to the trial court for those additional findings. *See* TEX. R. APP. P. 44.4(a). A supplemental clerk's record was later filed and, from such, we can now determine from the record that the trial court allocated the following sums as the components of its lump sum award:

(1) $671,415.15 in damages for loss of future earning capacity;
(2) $493,559.00 in interim medical costs;
(3) $337,367.00 in litigation expenses and costs; and
(4) $4,314,768.50 in attorney's fees.

However, these four components add up to $5,817,109.65, which is $63,439.85 less than the total lump sum amount of $5,880,549.50 allocated by the trial court. Appellee, in her supplemental brief, offers a remittitur for that amount, recognizing the discrepancy. Likewise, we do not find any justification or record support for this discrepancy. We consider the discrepancy, along with our review of the individual components of the lump sum award, below.

### B. The individual components of the lump sum

#### 1. Interim Medical Expenses

First, Dr. Virlar and Gonzaba argue the remand judgment included an excessive amount in the lump sum for Puente's interim medical expenses.[6] The portion of the lump sum for Puente's interim medical expenses covers the medical costs between the date of the original judgment and the date the periodic payment plan began to cover the future medical care expenses, i.e. between November 28, 2017 and January 1, 2019. The supplemental findings indicate the trial court allocated $493,559.00 for these interim medical costs.

---

[6] Appellants do not challenge the amount in the lump sum for lost future earning capacity.

We can infer the trial court reached this dollar amount by applying the calculations of Puente's medical expenses from Puente's expert Dr. Fairchild's report—a report the Texas Supreme Court specifically referred to as evidence that could be relied on to calculate and render judgment on remand, and which the trial court consistently referenced in its remand judgment and amended findings. *See Virlar*, 664 S.W.3d at 65. This comports with the manner in which the trial court calculated the first two future periodic payments for medical expenses in 2019 and 2020, using 100% of the amounts Dr. Fairchild projected for Puente's medical expenses in those years as well. Dr. Fairchild estimated the following projected medical costs for 2017 and 2018:

| Year | Annual Costs | Present Value of Annual Costs |
|------|--------------|-------------------------------|
| 2017 | $106,853 | $106,853 |
| 2018 | $386,706 | $380,691 |

We can further infer the trial court reached $493,559 total for the interim medical expenses by adding the costs for 2017[7] and the undiscounted costs for 2018 ($106,853 + $386,706 = $493,559). However, because these interim medical expenses were allocated into the lump sum, they are due and payable immediately and should therefore be reduced to present value. *See, e.g.*, *Rangel v. Robinson*, No. 01-05-00318-CV, 2007 WL 625042, at *2 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007, pet. denied) (stating lump sum awards for future damages in personal injury cases must be based on present value); *Morrell v. Finke*, 184 S.W.3d 257, 289 (Tex. App.—Fort Worth 2005, pet. denied) (applying present value requirement to future medical expenses in medical malpractice suit).

---

[7] Because the original judgment was signed on November 28, 2017, the present value of the projected costs for the remainder of 2017 is identical to the undiscounted costs for that period in Dr. Fairchild's report.

Therefore, the trial court erred by using the undiscounted $386,706 figure as the 2018 medical costs. Instead, the trial court should have applied the discounted $380,691 present value for the 2018 costs and only allocated $487,544 in total interim medical costs in the lump sum ($106,853 + $380,691 = $487,544). Thus the trial court's allocation of $493,559 for the interim medical costs was excessive by $6,015 ($493,559 - $487,544 = $6,015).[8]

Nevertheless, Dr. Virlar and Gonzaba further assert that only 82.62% of the $487,544 in interim medical expenses should be allocated for the time period of November of 2017 to January of 2019, for a total of $402,807.20. Their rationale is based on the fact that the jury's total award of future medical expenses totaled 82.62% of the total future medical expenses supported by Dr. Fairchild's report and testimony.[9] But appellants' argument assumes the jury intended to reduce each year's medical expenses, including 2017 and 2018, by the exact same percentage, a contention which is not supported by the record. The jury only awarded a single total amount for all future medical expenses. It did not itemize that total by year. Therefore, the record does not show that allocating the full $487,544 in interim medical expenses contradicts the jury's verdict. *See Columbia*, 654 S.W.3d at 143. Accordingly, with regard to the calculation of interim medical expenses, we find the trial court erred by not discounting the 2018 costs to present value, but we otherwise find no abuse of discretion.

---

[8] As explained further *infra*, we believe the error can be cured by remittitur, since allocation of $487,544 for the interim medical expenses would not constitute an abuse of discretion as it comports with the jury's award and is supported by sufficient record evidence. *See Cincinnati Ins. Co. v. Villanueva*, No. 04-20-00389-CV, 2022 WL 608962, at *7 (Tex. App.—San Antonio Mar. 2, 2022, pet. denied) ("The trier of fact is qualified to make a discount calculation" based on present value.). Indeed, allocation of $487,544 for the interim medical expenses would be well within the trial court's considerable discretion in determining when and how the jury's award is paid and how it is split between the lump sum and the periodic payments. *See Regent Care*, 610 S.W.3d at 837; *Virlar*, 664 S.W.3d at 65; *Columbia*, 654 S.W.3d at 143.

[9] Though the present value total of future medical expenses in Dr. Fairchild's report was $16,054,977, the jury awarded a present value total of $13,262,874.86.

### 2. Attorney's Fees and Litigation Expenses and Costs

Next, Dr. Virlar and Gonzaba assert the trial court erred in calculating the amount of attorney's fees and litigation expenses and costs incurred by Puente that should be paid in satisfaction of the lump sum award. They contend that (a) the amount of fees front-loaded in the lump sum payment should be calculated only on the amount of future medical expenses to be paid in future periodic payments, (b) no fees should be included that are calculated based on the portions of future medical expenses that would have been due after the date of Puente's death, or March 30, 2020, and (c) the evidence is not sufficient to support the trial court's calculation of litigation expenses to be included in the lump sum payment.

### a. Attorney's Fees

We note that this is not a situation where the trial court made a separate *award* of attorney's fees or of litigation expenses beyond the amounts awarded by the jury as damages. Instead, the trial court simply sought to ensure that the lump sum award was sufficient to enable appellee's payment of her attorney's fees up front, rather than requiring her attorneys to seek recovery from each and every future periodic payment as they became due. *See* TEX. CIV. PRAC. & REM. CODE § 74.507; *Columbia Valley Healthcare Sys., L.P. v. A.M.A. by & through Ramirez*, 654 S.W.3d 135, 144 n.8 (Tex. 2022) ("[T]ort plaintiffs typically must pay their own attorney's fees from the award."). The Texas Supreme Court has recognized that Section 74.507 "confirms the expectation that [attorney's fees] will be paid at the outset." *Columbia*, 654 S.W.3d at 144 n.8 (citing TEX. CIV. PRAC. & REM. CODE § 74.507).

The trial court, following the Texas Supreme Court's directions in *Virlar I,* ended up with two sums: (1) a sum to be paid up front for costs that would be incurred before or soon after the judgment (interim medical expenses and lost future earning capacity); and (2) a sum to be paid out

in future periodic payments. The next step was to ensure that the lump sum was sufficient to enable appellee to satisfy her obligation to pay attorney's fees based on her recovery. That involved calculating the amount owed by appellee to her attorney, based on her 40% contingency fee agreement, and moving that sum from future periodic payments into the lump sum award.

In doing so, the trial court erred by calculating 40% of the *total judgment* and moving that entire sum from what would otherwise be paid out in the future into the lump sum award to be paid up front. But, appellee would already be able to pay for 40% of interim medical expenses and lost future earning capacity (the sums already included in the lump sum award) from the original lump sum amount. The only additional consideration should have been that amount of attorney's fees attributable to future periodic payments, i.e. 40% of such future payments, so that the lump sum award included the entire contingency fee owed by appellee. *See Columbia*, 654 S.W.3d at 144 n.8.

The trial court divided the damages into a lump sum payment (including interim medical costs and lost earning capacity) with the remainder being future medical payments. Based on Puente's counsel's affidavit testimony that the attorney's fees in this case are 40% "of the gross amount recovered," the trial court should have calculated the amount of fees to be moved from the future medical payments to the lump sum based on 40% of $9,627,962.09,[10] or $3,851,184.84. However, the trial court calculated, instead, 40% of the total judgment of $10,786,921.24, arriving at attorney's fees of $4,314,768.50 to be reallocated. This resulted in the attorney's fees portion of the lump sum payment being excessive by $463,583.66. As explained below, though, we believe the error can be cured by remittitur.

---

[10] Total judgment of $10,786,921.24 minus lost earning capacity of $671,415.15 and interim medical expenses of $487,544 equals $9,627,962.09 in future medical payments.

Dr. Virlar and Gonzaba further assert the attorney's fees included in the lump sum amount should be reduced because no attorney's fees should be assessed on future medical expenses that will never become due after Puente's death.[11] But we find no support for this proposition. First, the trial court here was charged with entering the judgment that should have been entered after the trial, long before Puente died. *See Phillips v. Bramlett*, 407 S.W.3d 229, 243 (Tex. 2019) (when trial court was not required to consider new evidence to enter remand judgment, the remand judgment is the judgment that should have been entered originally); *see also* TEX. R. CIV. P. 156. Further, the Texas Supreme Court recognized in *Columbia* that nothing in section 74.507 indicates that the legislature intended for a defendant to be able to take advantage of a plaintiff's untimely death by not only avoiding future medical expense payments but by reducing the amount of attorney's fees to be recovered. 654 S.W.3d at 144 n.8 (citing TEX. CIV. PRAC. & REM. CODE § 74.507). Had the proper judgment been rendered after trial and before Puente died, there would be no reason for the trial court at that time to consider whether Puente would receive the periodic payments or whether they would be, at some unknown point, terminated upon her death.

Thus, as set forth above, we hold the trial court should have calculated the amount of attorney's fees to be moved from future periodic payments to the lump sum award as 40% of the amount of damages not initially included in the lump sum, or 40% of $9,627,962.09. While this is $463,583.66 less than calculated by the trial court, we believe the error in this regard can be cured by remittitur, *see infra*.

---

[11] As discussed further *infra*, the trial court ensured the remand judgment clearly stated that future periodic payments falling due on or after the death of Jo Ann Puente terminate on the date of her death and that, following such event, the portion of any security given for such payments reverts to the defendants. *See* TEX. CIV. PRAC. & REM. CODE § 74.505(c) (requiring that, upon termination of periodic payments, "the court shall order the return of the security, or as much as remains, to the defendant") and § 74.506(b) (stating periodic payments terminate on the death of the recipient).

### b. Litigation Expenses and Costs

Dr. Virlar and Gonzaba also assert the trial court erred in calculating the amount of litigation expenses and costs when setting the lump sum amount of the judgment, contending the evidence was insufficient. Litigation expenses and costs may be included in the lump sum. *See Virlar*, 664 S.W.3d at 64 (citing *Regent Care*, 610 S.W.3d at 838; *Columbia*, 654 S.W.3d at 143–44). Even though the appropriate standard of review is abuse of discretion, we may nevertheless review the litigation expenses and costs amount for sufficiency of the evidence. *In re Estate of Vrana*, 335 S.W.3d 322, 329 (Tex. App.—San Antonio 2010, pet. denied).[12]

Testimony by affidavit can suffice to support an award of litigation expenses and costs. *See Bright & Co. v. Holbein Family Mineral Tr.*, 995 S.W.2d 742, 748 (Tex. App.—San Antonio 1999, pet. denied) (holding in part that testimony of plaintiff's attorney that costs and expenses were reasonable and necessary was legally and factually sufficient without any additional evidence to support award); *Cleveland v. Taylor*, 397 S.W.3d 683, 701 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (affidavit of plaintiff's attorney sufficed to show costs awarded were reasonable and necessary).

Here, the amended findings for the trial court's remand judgment merely state that the amount in the lump sum for litigation expenses and costs is "over $200,000 to repay a pro rata portion of $310,000 loan from Jo Ann Puente's daughter's settlement for litigation expenses, plus additional litigation expenses of Jo Ann Puente exceeding $100,000." On our limited remand, the trial court set out in its supplemental findings the exact dollar amount of these litigation expenses:

---

[12] This "hybrid analysis" requires a "two-pronged inquiry:" we ask first whether the trial court had sufficient information upon which to exercise discretion and, if so, we next ask whether the trial court erred in the application of its discretion. *Id.* (citing *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex. App.—El Paso 2004, no pet.).

$337,367. As set forth below, we conclude sufficient evidence supports the trial court's allocation of $337,367 in litigation expenses and the trial court did not abuse its discretion.

At the friendly suit hearing in July of 2015, in which the trial court approved Puente's daughter C.P.'s $3.3 million settlement with Metropolitan Methodist Hospital, and then two years later at a hearing on the motion for judgment on the verdict, Puente's counsel confirmed that they had incurred $310,000 of litigation expenses prior to the settlement of C.P.'s claims and another $100,000 of additional litigation expenses thereafter. We find no controverting evidence disputing the amounts of expenses and costs to which Puente's counsel testified. Therefore, this evidence suffices to support $410,000 in litigation expenses were incurred by counsel for Puente and C.P. *See Holbein*, 995 S.W.2d at 748; *Cleveland*, 397 S.W.3d at 701.

The trial court on remand reduced the pre-settlement expenses of $310,000 using a pro rata calculation. The trial court's supplemental findings simply set forth the amount of $337,367 for the allocated litigation expenses and costs after that reduction. It is nevertheless clear from the amended findings and the supplemental record that the trial court's pro rata calculation was based on the percentage of the combined recovery of Puente and C.P. that Puente individually recovered. Because Puente's total recovery was $10,786,921.24, and her daughter C.P.'s settlement recovery was $3,304,000, Puente's recovery was 76.57% of the combined recovery. Likewise, 76.57% of $310,000 is $237,367, which the trial court used as Puente's pro rata portion of the $310,000 in pre-settlement litigation costs. Add to that the additional $100,000 in litigation expenses supported by the record and you arrive at the trial court's finding of $337,367.

We conclude the trial court had sufficient information upon which to exercise its discretion and did not act arbitrarily or unreasonably when it used its pro rata calculation to reduce the litigation expenses and costs. *See Vrana*, 335 S.W.3d at 329. We overrule this issue.

**III.** **The trial court did not erroneously award recovery for future medical expenses after the date of Puente's death.**

Dr. Virlar and Gonzaba argue the trial court's judgment on remand improperly requires periodic payments for future medical expenses projected to be incurred after Puente's death. "Periodic payments, other than future loss of earnings, terminate on the death of the recipient." TEX. CIV. PRAC. & REM. CODE § 74.506(b). "On termination of periodic payments of future damages, the court shall order the return of the security, or as much as remains, to the defendant." *Id.* § 74.505(c). Here, the trial court's remand judgment calculated periodic payments for every year of Puente's projected life expectancy based on the trial evidence, from 2019 to 2048.

Dr. Virlar and Gonzaba argue this was error. But, the language of the judgment on remand explicitly ordered that, "pursuant to Chapter 74, Section 74.506 of the Texas Civil Practice and Remedies Code, [] any future periodic payments falling due on or after the death of Jo Ann Puente 'terminate on the death of the recipient,' and following the termination of any such payment 'specified in the judgment for periodic payments, any obligation of the defendant physician or health care provider to make' such payment ends and the portion of any security given for such payments that terminate 'reverts to the defendant' upon such termination." Thus, the remand judgment does not require Dr. Virlar and Gonzaba to pay or secure any of the periodic payments that would have been due after the date of Puente's death had she not passed away.

Dr. Virlar and Gonzaba nevertheless argue the remand judgment's recitation of periodic payments for every year of Puente's projected life expectancy constituted an abuse of discretion because it exceeded the trial court's authority on remand. But the Texas Supreme Court gave the trial court the authority to render the remand judgment this way. The Court explained:

> The trial court's failure to award any periodic payments was error, and we reverse
> the portion of the judgment awarding all of the damages for future medical expenses
> in a lump sum. Given that Puente died during the pendency of this appeal, the trial

court should determine on remand how much of the award of future medical expenses she should have received in a lump sum ***and how much she <u>was</u> projected to incur periodically between the time of trial and her death.*** Puente's estate is entitled to recover those amounts. Subchapter K provides that periodic payments of future medical expenses "terminate on the death of the recipient," [TEX. CIV. PRAC. & REM. CODE] § 74.506(b), so the court should not order petitioners to pay damages for any future medical expenses Puente was projected to incur after the date of her death.

*Virlar*, 664 S.W.3d at 65 (emphasis added). Because the statute and the remand judgment explicitly state that Puente's estate representative shall not recover damages for any future medical expenses Puente was projected to incur after the date of her death, the trial court did not exceed its authority or otherwise abuse its discretion by showing its work and calculating periodic payments for every year of Puente's projected life expectancy, as instructed by the Texas Supreme Court. Dr. Virlar and Gonzaba's third issue is overruled.

Finally, Dr. Virlar and Gonzaba contend the periodic payment award for 2020 should be reduced because Puente died on March 30, 2020 and was therefore only alive for 24.6% of that year. We find no authority for this position. Texas Civil Practice & Remedies Code section 74.506(b) specifically says that future payments "*falling due* on or after the death" of the recipient must terminate. TEX. CIV. PRAC. & REM. CODE § 74.506(b) (emphasis added). We will not set the precedent that a court would have to, in its judgment, state that any payment already made would have to be refunded pro rata in the event of a recipient's death after it was paid but before the next payment came due. Therefore, the trial court's award for all of the 2020 periodic payment due on December 31, 2019 does not violate the periodic-payments statute. *See id.*

## IV. The trial court rendered judgment consistent with the jury's verdict.

Dr. Virlar and Gonzaba further argue the trial court awarded excessive future medical expenses that are inconsistent with the jury's verdict. Subchapter K of the TMLA "affords considerable discretion to the trial court in structuring periodic-payment awards." *Virlar*, 664

S.W.3d at 65 (quoting *Columbia*, 654 S.W.3d at 143). However, the statute "gives the trial court no discretion to craft its own award of damages inconsistent with the jury's verdict." *Columbia*, 654 S.W.3d at 141 (quoting *Regent Care*, 610 S.W.3d at 838); *see Virlar*, 664 S.W.3d at 63 n.5 ("The trial court is merely being asked to structure payment of the damages in a manner that must not be inconsistent with the jury verdict.").

The remand judgment listed three categories of future medical expenses: (1) the interim medical expenses from between the date the original judgment was rendered and the date the periodic payment plan began to cover the future medical care expenses, i.e. between November 28, 2017 and January 1, 2019 (these were part of the lump sum award); (2) the periodic payments due on December 31, 2018 for the calendar year 2019 and the periodic payments due on December 31, 2019 for the calendar year 2020; and (3) the periodic payments beginning on December 31, 2020.

As set forth above, the remand judgment does not require Dr. Virlar or Gonzaba to make any periodic payment that came due after Puente's death. This leaves the first two categories: the amounts for the interim medical expenses and for the periodic payments for 2019 and 2020. Dr. Virlar and Gonzaba contend the trial court's amounts for these two categories of future medical expenses are inconsistent with the jury's verdict for two reasons: (1) these future medical expenses should have been reduced in the trial court's remand judgment because the jury awarded only 82.62% of the total future medical expenses from Dr. Fairchild's report; (2) these expenses should have been based on the present value from Dr. Fairchild's report rather than the undiscounted costs.

**A. The trial court's determination that the periodic payments for 2019 and 2020 should be 100% of the future medical expenses for those years as calculated in Dr. Fairchild's report did not contradict the jury's verdict.[13]**

Dr. Virlar and Gonzaba assert the trial court's periodic payments for 2019 and 2020 were inconsistent with the jury's verdict because the trial court failed to reduce the future damages projected by Puente's expert Dr. Fairchild based on the jury's award. They argue, as they did above with regard to interim medical expenses, that because the jury only awarded 82.62% of the total future medical expenses to which Dr. Fairchild testified, each category of future medical expenses should be reduced by 82.62% in the trial court's judgment. But, as we discussed above, appellants' argument assumes the jury intended to reduce each year's medical expenses by the exact same percentage, a contention which is not supported by the record. Therefore, the record does not show that allocating the full amount of medical expenses from Dr. Fairchild's report in the early years contradicts the jury's verdict. We note that the overall future medical expenses included in the judgment and to be paid either as part of the lump sum or in future periodic payments reflect the full amount awarded by the jury and no more. *See Virlar*, 664 S.W.3d at 65 (recognizing the considerable discretion of the trial court in structuring period-payment awards); *Columbia Valley Healthcare Sys., L.P. v. A.M.A. ex rel. Ramirez*, 654 S.W.3d 135, 143 (Tex. 2022) (same); TEX. CIV. PRAC. & REM. CODE § 74.503.

**B. The periodic payments for 2019 and 2020 should not be reduced to present value.**

Dr. Virlar and Gonzaba next argue the awards for interim medical expenses and periodic payments for 2019 and 2020 should have been based on the present value of these expenses from Dr. Fairchild's report rather than the undiscounted costs. As discussed further *infra*, we agree the

---

[13] We have ruled, above, that the trial court did not err in calculating the interim medical expenses included in the lump sum award based on 100% of Fairchild's report for those years.

trial court should have awarded, as part of the lump sum, interim medical expenses based on the discounted present value of these expenses from Dr. Fairchild's report, and we suggest remittitur to remedy the trial court's use of the undiscounted value of these expenses.

But the periodic payments for 2019 and 2020 are not part of the lump sum award. Consequently, these awards should not be reduced to present value, as they were not due on the date of the original judgment. Instead, they were due on December 31, 2018 and December 2019 respectively, as part of the periodic payment plan. The Texas Supreme Court specifically instructed that the trial court should rely on the "undiscounted" projections of future medical expenses from Dr. Fairchild's report—not the present value—"in determining the dollar amount, timing, and number of the periodic payments that would compensate Puente for her future damages." *Virlar*, 664 S.W.3d at 65. This accords with section 74.501, which states the periodic payments are for "future damages," referring to those damages "that are incurred after the date of judgment." TEX. CIV. PRAC. & REM. CODE § 74.501.[14] Therefore, the trial court correctly included periodic payments for 2019 and 2020 based on the undiscounted costs from Dr. Fairchild's report, in accordance with the jury's verdict.

We hold, based on this reasoning, the trial court did not contradict the jury's verdict, violate the Texas Supreme Court's instructions, or otherwise abuse its discretion by awarding periodic payments due before Puente's death. *See Virlar*, 664 S.W.3d at 65. We overrule Dr. Virlar and Gonzaba's fourth issue.

---

[14] In contrast, since attorney's fees for periodic payments are due "at the outset" in a lump sum, these fees are based on the present value of the periodic payments. *Columbia*, 654 S.W.3d at 144 n.8; *see* TEX. CIV. PRAC. & REM. CODE § 74.507.

**V.**     **The trial court did not err by awarding postjudgment interest as of the date of the original judgment.**

Finally, Dr. Virlar and Gonzaba argue the trial court erred by awarding postjudgment interest as of the date of the original judgment rather than the date of the judgment on remand. We disagree.

When an appellate court remands a case for the trial court to enter judgment in accordance with its opinion, and the trial court is "not required to admit or consider any additional evidence before entering its remand judgment, . . . the date the trial court entered the original judgment is the 'date the judgment is rendered,' and postjudgment interest began to accrue and must be calculated as of that date." *Phillips v. Bramlett*, 407 S.W.3d 229, 243 (Tex. 2013) (quoting TEX. FIN. CODE § 304.005(a)); *see id.* (affirming court of appeals' holding that "trial court erred in calculating postjudgment interest based on the date of the remand judgment rather than the date of the original judgment."). In contrast, if the trial court on remand must reopen the record and hear new evidence to render judgment, "postjudgment interest accrue[s] from the final judgment date rather than the original, erroneous judgment." *Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 76 (Tex. 2014).

Here, the Texas Supreme Court did not remand for a new trial. *See Phillips*, 407 S.W.3d at 240, 243. Instead, it affirmed in part, and reversed and remanded in part only for the trial court to apply the settlement credit required under Chapter 33 and structure periodic payments for at least some of the future damages, as the trial court should have done in its original judgment, and thereby "form a proper judgment on these issues of damages." *Virlar*, 664 S.W.3d at 66. Indeed, the Texas Supreme Court specifically stated in a footnote: "Here, the jury made the determination of liability and damages. The trial court is merely being asked to structure payment of the damages in a manner that must not be inconsistent with the jury verdict." *Id.* at 65, n.5. The Texas Supreme

Court further noted that the trial court already had the evidence needed to calculate and render its judgment on remand, stating "the trial court was presented with sufficient evidence here" to order periodic payments under section 74.503, since the trial court "had the life care plan of Dr. Keith Fairchild, Puente's expert at trial, which presented projected future costs for Puente's medical expenses each year over her 31-year life expectancy" and "also presented the present value of each year's costs[.]" *Id.* at 65. The Texas Supreme Court stated: "The trial court reasonably could have relied on the report's undiscounted projections of future costs in determining the dollar amount, timing, and number of the periodic payments that would compensate Puente for her future damages." *Id.*

Thus, as in *Phillips*, the trial court here was not "required to conduct a new trial or other evidentiary proceeding before entering the remand judgment." 407 S.W.3d at 243. Instead, the Texas Supreme Court's judgment remanding this case "was an instruction to enter the judgment which the trial court should have entered" when it entered its original judgment. *Id.* at 241 (quoting *Nederlandsch–Amerikaansche–Stoomvaart–Maatschappij; Holland–Am. Line v. Vassallo*, 365 S.W.2d 650, 656 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.)). For that reason, postjudgment interest accrues from the date of that original judgment. *See id.*; *Long*, 426 S.W.3d at 81 ("If the trial court possessed a sufficient record to render a correct judgment, the Finance Code and the rules of procedure allow postjudgment interest to accrue from the original judgment date.").

Dr. Virlar and Gonzaba counter that new evidence was necessary on remand to account for Puente's death. But the Texas Supreme Court noted in its opinion both that Puente had already passed away while the previous appeal was pending and that the trial court already had the evidence needed to calculate and render its judgment on remand. *Virlar*, 664 S.W.3d at 58, 65. The trial court followed the Texas Supreme Court's instructions by using only the trial evidence

to recalculate the damages. Its remand judgment, further, stated the judgment "is the court's original judgment corrected upon remand to conform to the Supreme Court's instructions based upon the evidentiary record before this court on November 28, 2017," i.e. the date of the original judgment. Finally, while the remand judgment ordered "any future periodic payments falling due on or after the death of Jo Ann Puente 'terminate on the death of the recipient,'" it did not need to set forth her specific date of death to make that term of the judgment effective. Such a provision would be effective even if Puente had not yet died. Thus, the trial court ordered that any obligation to pay periodic payments ends upon Puente's death, without incorporating any new evidence.

Dr. Virlar and Gonzaba argue that *Long* applies, not just in cases where additional evidence is required and taken, but where the trial court is required to perform additional deliberations. 426 S.W.3d at 76. They refer to the complexity of the decisions made by the trial court on remand and the discretion required in making those decisions. Ultimately, they contend that because the trial court's task on remand was much more than ministerial, the new judgment called for a new date of postjudgment interest accrual. But, even where the trial court is called upon to make additional fact findings based on the evidence previously presented, which calls for additional argument of counsel and deliberation by the trial court, postjudgment interest accrues from the original judgment instead of the new one. *Phillips*, 407 S.W.3d at 240–41 (citing *D.C. Hall Transp., Inc. v. Hard*, 355 S.W.2d 257, 258 (Tex. Civ. App.—Fort Worth 1962), writ ref'd n.r.e., 163 Tex. 504, 358 S.W.2d 117 (1962) (per curiam)). Thus, we find no basis for appellants' position and have found no cases in support of it.

Dr. Virlar and Gonzaba's fifth issue is overruled.[15] [16]

## VI.     The error in the lump sum total can be cured by remittitur

In summary, we have determined the trial court erred by allocating an excessive amount for the lump sum total, specifically miscalculating the interim medical costs and the attorney's fees. However, "[a] court of appeals may exercise its authority to suggest a remittitur when there is insufficient evidence to support the full amount of an award, but sufficient evidence to support a lesser award." *Advanced Tech. Transfer & Intellectual Prop. Group LLC v. Krenek*, 627 S.W.3d 540, 547 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing Tex. R. App. P. 46.3). Because we have concluded the evidence supports a specific lesser amount for the lump sum award and we find no other reversible errors in the remand judgment, we suggest a remittitur.

---

[15] In their sixth issue, Dr. Virlar and Gonzaba argue that several of the trial court's amended findings are supported by factually insufficient evidence, reiterating their previous arguments that the trial court awarded an excessive lump sum recovery including excessive attorney's fees and excessive litigation expenses and costs, awarded excessive periodic payments for 2019 and 2020, and improperly awarded periodic payments due after Puente's death. When we previously addressed these arguments, above, we referenced the remand judgment and the amended findings and held the trial court's damages awards were both supported by the trial evidence including Dr Fairchild's report and accorded with the Texas Supreme Court's instructions and relevant law. Because we have already rejected these arguments, we cannot conclude the evidence is factually insufficient to support the trial court's amended findings regarding these awards. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) ("We will set aside a factual finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."); TEX. R. APP. P. 47.1. The only new argument that Dr. Virlar and Gonzaba raise in their sixth issue is that the trial court's amended findings are supported by factually insufficient evidence because the trial court failed to explain how it reached the division between the lump sum and periodic payment awards. *See* TEX. R. APP. P. 47.1. But as discussed *supra*, the trial court did explain its allocation of certain categories into the lump sum. Furthermore, we conclude the trial court's factual findings underlying this allocation are supported by factually sufficient evidence, *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) ("We will set aside a factual finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.").

[16] In their final issue on appeal, Dr. Virlar and Gonzaba argue the trial court abused its discretion by taking judicial notice of facts regarding Dr. Virlar's medical license that occurred several years after the original judgment was rendered, including that Dr. Virlar was convicted of health care fraud and lost his medical license in 2023. When evidence is improperly judicially noticed in a civil case, we disregard that evidence in our analysis. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("When evidence is the subject of improper judicial notice, it amounts to no evidence"); *Davis v. State*, 293 S.W.3d 794, 799 (Tex. App.—Waco 2009, no pet.). We will not reverse a trial court's judgment based on an error of judicial notice unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *In re Estate of Downing*, 461 S.W.3d 231, 240 (Tex. App.—El Paso 2015, no pet.). Here, the trial court took notice of these facts about Dr. Virlar's medical license **after** it rendered its judgment on remand. Dr. Virlar and Gonzaba do not allege these facts had any impact on the trial court's remand judgment and amended findings. In our analysis of all issues on appeal, we disregarded these facts, which are irrelevant to the propriety of the trial court's remand judgment. *See Guyton*, 332 S.W.3d at 693.

We conclude the evidence supports the following lump sum component amounts:

(1) $671,415.15 in damages for loss of future earning capacity;
(2) $487,544 in interim medical costs (rather than the trial court's amount of $493,559);
(3) $337,367.00 in litigation expenses and costs; and
(4) $3,851,184.84 in attorney's fees (rather than the trial court's amount of $4,314,768.50).

These components total $5,347,510.99, which is $533,038.51 less than the trial court's lump sum total of $5,880,449.50. This difference accounts for the $63,439.85 discrepancy between the numbers included in the trial court's supplemental findings and the total lump sum award, the $6,015 discrepancy in interim medical expenses, and the $463,583.66 discrepancy in attorney's fees. In her initial brief, Puente's estate representative offers a remittitur of $369,372.91, but in her supplemental brief, she offers a remittitur of only $63,439.85. Because we have determined that neither of these voluntary remittitur amounts is "sufficient to cure the reversible error, but that remittitur is appropriate," we "must suggest a remittitur [of $533,038.51] in accordance with Rule 46.3." TEX. R. APP. P. 46.5.

## CONCLUSION

Because the lump sum total in the remand judgment was excessive by $533,038.51, and we find no additional reversible error, we suggest a remittitur of $533,038.51. If appellee, within twenty days of the date of this opinion, files a remittitur in this Court in the amount of $533,038.51, we will modify the judgment in accordance with this opinion and affirm the judgment as modified.[17] *See Critical Path Res., Inc. v. Cuevas*, 561 S.W.3d 523, 535 (Tex. App.—Houston [14th Dist.] 2018), supplemented, 582 S.W.3d 348 (Tex. App.—Houston [14th Dist.] 2018, no

---

[17] We recognize that modifying the judgment to reduce the lump sum total would necessarily increase the amount of the jury's award that would be left over for the periodic payments. But since the trial court already allocated 100% of Dr. Fairchild's expenses for the 2019 and 2020 periodic payments, and Puente died in 2020, reducing the lump sum total would merely increase the amount of the jury's award left for the periodic payments for 2021 through 2048. The obligation to pay those periodic payments beginning in 2021 "terminate[d] on the death of the recipient." TEX. CIV. PRAC. & REM. CODE § 74.506(b). It would therefore be unnecessary to further modify the judgment to increase the amounts for those periodic payments beginning in 2021.

pet.). Otherwise, the trial court's judgment will be reversed and remanded to the trial court for entry of a proper judgment consistent with this opinion. *See* TEX. R. APP. P. 46.3; *THB Construction, LLC v. Holt Texas, Ltd.*, No. 05-20-00020-CV, 2022 WL 123105, at *7 (Tex. App.—Dallas Jan. 13, 2022), judgm't set aside, op. not vacated, 2022 WL 336559 (Tex. App.—Dallas Feb. 4, 2022, no pet.) (mem. op.).

Lori Massey Brissette, Justice